In the Matter of NATHANIEL MACK, Petitioner, v. COURT OF GENERAL SESSIONS OF THE COUNTY OF NEW YORK et al., Respondents.

First Department, July 6, 1961.

*Arthur Addess* of counsel (*Bobick & Deutsch,* attorneys), for petitioner.

*Melvin Stein* of counsel (*H. Richard Uviller* with him on the brief; *Frank S. Hogan, District Attorney*), for respondents.

STEVENS, J. Petitioner was indicted by the Grand Jury of Queens County in May, 1960, on two counts. The first count charged the petitioner as defendant with criminally concealing

and withholding stolen and wrongfully acquired property as a felony, and the second count charged the petitioner as defendant with the crime of criminally buying and receiving stolen and wrongfully acquired property as a felony.

Each count designates February 17, 1960, as the date of the commission of the alleged crime, and describes the property involved as "[a] quantity of wearing apparel" of the total value of $360. The particular property therein referred to consisted of a quantity of swim suits and children's coats.

The defendant pleaded not guilty, and on January 19, 1961 was brought to trial in the Queens County Court. At that time he waived his right to a jury trial and elected to stand trial by the court without a jury.

The first witness who testified on behalf of the People testified as to the theft of certain swim suits from the Manhattan store in which he was employed. The witness could not identify the swim suits taken from this petitioner, as the swim suits which were the subject of the theft.

The next witness testified as to the theft of the coats from the store (also in Manhattan) in which he was employed. Thereafter the arresting officer testified that on February 17, 1960, the day the coats were stolen, he had the petitioner under surveillance in New York County from about 10:00 A.M. to 6:15 P.M. At that time he had a conversation with petitioner concerning the coats which were found in the trunk of the car petitioner was driving. According to the officer, petitioner stated that he had a receipt for the coats at his home in Queens. The officer entered the car, rode out to Queens, where it developed that petitioner did not have any receipt, and at which time petitioner allegedly acknowledged that he knew the coats were stolen.

After cross-examination the People rested. Petitioner's then counsel moved to dismiss on the grounds that the People had failed to prove a prima facie case as a matter of law.

The court dismissed the case on the ground it had no jurisdiction and directed that the matter be referred to the District Attorney of New York County.

On January 27, 1961, the New York County Grand Jury indicted petitioner, charging the same two crimes as had been charged in the Queens indictment. The District Attorney asserts that the "New York County indictment was predicated on substantially the same facts as the Queens indictment". However, the New York County indictment concerned itself solely with the coats, and alleged the crime occurred February 16, 1960.

On arraignment petitioner, on February 15, 1961, pleaded former acquittal. February 24, 1961, petitioner moved to dismiss the indictment on the ground of former jeopardy. This motion was denied and the present article 78 proceeding instituted thereafter.

In the affidavit of petitioner's counsel filed in support of the petition, it is asserted that the bathing suits were recovered in the petitioner's home in Hollis, Queens. Nowhere do the People deny that assertion. Their answer denies that a trial would constitute a double jeopardy, and affirmatively pleads that this article 78 proceeding is improper.

While habeas corpus may be the preferable method, all of this court are agreed that if there is double or former jeopardy, the fact that an article 78 proceeding is rarely entertained in cases of this nature, would not preclude the granting of the relief sought. There is, however, a difference of opinion as to whether there is former jeopardy.

" ' Jeopardy,' in its common use, is exposure to death or injury and is the equivalent of the word ' danger '. * * * [I]t attaches the instant the accused is called upon to stand on his defense in a criminal prosecution." (2 Wharton's, Criminal Evidence [11th ed.], § 857.)

In *People ex rel. Stabile* v. *Warden* (202 N. Y. 138) the rule was stated: " If a person accused of crime is placed upon trial therefor upon an indictment duly found and sufficient in form and he pleads thereto and proceeds with the trial before a jury duly sworn to try the issues so joined, he is placed in jeopardy within the constitutional provisions " (p. 150).

In the present case, while the minutes of the Queens Grand Jury are not before us, the record reveals that the court, prior to the taking of testimony, denied a motion to dismiss upon the basis of the Grand Jury minutes. It said: " The Court has examined the Grand Jury minutes and finds sufficient to warrant conviction of the defendant beyond a reasonable doubt, if the testimony therein given is true." The court thus found the indictment sufficient within the requirements of section 284 of the Code of Criminal Procedure, and its ruling was a determination that there was sufficient evidence, prima facie, before the Grand Jury to warrant the indictment. (Code Crim. Pro., § 251.)*

---

* There is a presumption that an indictment is based upon legal and sufficient evidense until there is satisfactory proof in the record to the contrary. (*People* v. *Nitzberg,* 289 N. Y. 523.) Here the court's determination buttressed the presumption and nowhere in the record do we find satisfactory proof to the contrary.

Wharton speaks of four essentials to sustain a plea of former jeopardy. It must appear "(1) that there was a former prosecution in the same state for the same offense; (2) that some person was in jeopardy on the first prosecution; (3) that the parties are identical in the two prosecutions; and (4) that the particular offense, on the prosecution of which the jeopardy attached, was such an offense as to constitute a bar." (2 Wharton's, Criminal Evidence [11th ed.], § 859.) (As to identity of offenses, see, also, Paperno and Goldstein, Criminal Procedure in New York, § 242.)

"A plea of *autrefois acquit* must be upon a prosecution for the same identical offense. 4 Bl. 336. It must appear that the offense charged, using the words of Chief Justice Shaw, 'was the same *in law* and *in fact*. The plea will be vicious, if the offenses charged in the two indictments be perfectly distinct in point of law, *however nearly they may be connected in fact.*' *Commonwealth* v. *Roby,* 12 Pick. 496, 504." (*Burton* v. *United States,* 202 U. S. 344, 380.) "The general rule is that the two offenses must be in substance precisely the same, or of the same nature, or of the same species, so that the evidence which proves the one would prove the other." (*People* v. *Broderick,* 146 Misc. 566, 569.)

Applying the foregoing tests and principles to the case before us, we note the trial court found that the indictment was properly returned. The defendant, after his plea of not guilty, was tried in Queens County. The court clearly had jurisdiction of the person. There is no question either that the petitioner here was the defendant in the Queens action. The only points remaining are whether there was jurisdiction of the subject matter, was the defendant there in jeopardy, and is there the requisite identity of offense to bar the present prosecution?

The People's affidavit concedes that the New York County indictment is predicated upon substantially the same facts as the Queens indictment subject to the limitation heretofore noted and the crimes charged are identical with those in the Queens indictment.

The affidavit of petitioner's counsel filed in support of this application asserts flatly that the swim suits were found in petitioner's home in Hollis, Queens. This, as pointed out, is not denied or questioned. The indictment and the counts therein under which the petitioner went to trial embraced indistinguishably and inseparably the subject matter of the swim suits. The court in Queens thus had jurisdiction of the person and the subject matter. Indeed the court recognized this when it accepted proof as to the theft of the swim suits.

That phase of the crimes charged failed not because of lack of jurisdiction but because of insufficiency of proof as to the identity of the articles in question as stolen articles. Thus, when the defendant entered upon the trial he was in jeopardy, and had he been convicted upon either or both counts, certainly as to the swim suits, the convictions could have been sustained.

The proof required as to the offenses charged in the indictments consists of the same elements. Section 1308 of the Penal Law defines the crime with which the defendant is charged. '' There must be three concurring facts to constitute the crime: 1. The property must have been stolen by some one. 2. It must have been bought, received, concealed or withheld by a certain person. 3. Such person must have known that the property was stolen. While the Code does not expressly so provide, by necessary implication the action of the accused person must have been taken with felonious intent.'' (*People* v. *Acerno,* 184 App. Div. 541, 542.)

It appears that the matter covered in the New York County indictment was covered in the Queens indictment upon which the petitioner was tried. The fact that there was an insufficiency of evidence to sustain a part of an inseparable and indistinguishable charge, of which the court clearly had jurisdiction, does not warrant a carving out of the remaining portion as to which there might be doubtful jurisdiction * and dismissing that portion on the ground of a lack of jurisdiction, so as to permit a resurrection thereof in a new and separate indictment. (Cf. *People* v. *Davis,* 56 N. Y. 95; *Pontius* v. *People of State of N. Y.,* 82 N. Y. 339, 345.) The same statute is involved and the evidence as to essential elements required to support a conviction in New York County, would have been sufficient to warrant a conviction in Queens. The County Court in Queens was a court of competent jurisdiction to determine the guilt or innocence of the petitioner upon the accusation made.** The test is whether the defendant was put in jeopardy for the same offense. (See *People ex rel. Kwiatowski* v. *Trenkle,* 169 Misc. 687; see, also, *People ex rel. Moskoff* v. *Weinstock,* 21 Misc 2d 14.)

---

* It might be noted that if the coats came to rest or were found in Queens prior to the actual arrest of the defendant the County Court unquestionably would have had jurisdiction both of the subject matter and the person in that respect. Since the record is unclear on that point we do not premise our determination upon that point.

** It should be noted that section 40 of the Code of Criminal Procedure provides that " A county court must send every indictment there found for a crime not triable therein to the Supreme Court to try and determine the same." If the County Court had any doubt as to its jurisdiction the case could properly have been transferred to the Supreme Court. This might have particular application to the coats.

Moreover, section 404 of the Code of Criminal Procedure expressly provides: "If the crime were committed within the exclusive jurisdiction of another county of this state, the court *must* direct the defendant to be committed for such time as it deems reasonable, to await a warrant from the proper county for his arrest; or if the crime be a misdemeanor only, it may admit him to bail, in an undertaking, with sufficient sureties, that he will, within such time as the court may appoint, appear in such court to await a warrant from the proper county for his arrest." (Emphasis supplied.)

The granting of the motion to dismiss, though made in the erroneous belief that there was a total lack of jurisdiction, was in effect an acquittal. The statute having explicitly provided a specific mode of procedure where jurisdiction is totally lacking, the court could not create a separate distinctive method of its own. The defendant in this case was placed in jeopardy when the court began receiving evidence, and its act of acquittal because it believed itself entirely without jurisdiction, when in fact it was not, cannot nullify the jeopardy. (*People ex rel. Meyer* v. *Warden,* 269 N. Y. 426.) " It is not necessary in order that a person may avail himself of the constitutional right not to be placed twice in jeopardy for the same offense that the prior trial shall have resulted in a valid judgment either of conviction or acquittal. It is sufficient if the prisoner was actually placed in jeopardy in that he was in danger of having a valid judgment pronounced as the result of the trial." (*Ibid.,* p. 429.)

The change of date in the New York County indictment is apparently an effort to bring this case within that group of cases which hold a former acquittal on a charge of the doing of a wrongful act subsequent to a certain date is not a bar to a prosecution for illegal acts prior to that date. (Cf. *People* v. *Sinell,* 131 N. Y. 571.) That rule is not applicable here because the essentials to show former jeopardy have been established. Since the basic facts are not in dispute the issue is solely one of law.

Accordingly, the application should be granted and the writ should be issued. Settle order.

BOTEIN, P. J. (dissenting). It is understandable that the applicant herein should seek to avoid what appears to him to be the fruitless ordeal of a second prosecution by an appeal to this court's extraordinary power of prohibition; and I am in full accord with the majority that a proper showing of double jeopardy that would ultimately result in an acquittal should enlist the exercise of that power. But is there such a showing

here? I entertain, at the least, grave doubts — doubts that may perhaps be resolved by the trial in the Court of General Sessions; and for this reason only do I dissent and vote to deny the application.

The count of the indictment in Queens County which charged the petitioner with "receiving" referred to "a quantity of wearing apparel"— partly owned by a sportswear company, partly owned by a coat company. There was a complete failure of proof upon the trial in Queens County Court that the sportswear — bathing suits — had been stolen; and proof of such theft was an essential element of the crime as charged. In the absence of such proof it was pointless to proceed further and identify the place of petitioner's receipt of the suits, and so the introduction of testimony to that end was not even attempted. With regard to the coats, however, the prerequisite of an antecedent theft was shown and the testimony located their receipt in New York County. Similarly, with regard to the count for "concealing", no testimony at all was offered relating to the criminal "concealment" of the bathing suits. In contrast, there was undisputed testimony that the coats were found in New York County in the trunk compartment of an automobile in petitioner's possession, and that the detective who found them then got in the car and drove to Queens with petitioner on the latter's representation that a receipt for the coats was at his home in Queens.

Thus we have a record silent as to the place of receiving or concealing the bathing suits, but explicit and uncontroverted as to the place of receiving and concealing the coats. I do not ignore the well-established proposition that each count of the indictment, though embracing both bathing suits and coats, charged but a single offense (Code Crim. Pro., §§ 278, 279, 295-d; *Woodford* v. *People,* 62 N. Y. 117, 128; *People* v. *Hall,* 186 Misc. 62; *Smith* v. *State of Ohio,* 59 Ohio St. 350; *State* v. *Weathersbee,* 125 S. C. 179). If there were any showing at all that the bathing suits had been received or concealed in Queens County, we of course could not by some species of judicial surgery hold that the receipt of the coats found in New York County could constitute the basis for an indictment to be tried in the Court of General Sessions of New York County. But a finding of double jeopardy here, or in other words a finding that the Queens County Court has jurisdiction, would be supported only by affirmative, undisputed proof that part of the goods were received and concealed in New York County and upon no proof at all as to where the remaining goods were received or concealed. The vulnerability of this alleged finding

of jurisdiction in Queens County is made manifest by the rule that, since the County Courts are of limited statutory jurisdiction, the record must show the facts conferring jurisdiction and no presumption of jurisdiction is indulged in (*People ex rel. Dold* v. *Martin*, 284 App. Div. 127), as well as the rule that the sufficiency of an indictment and the power of a court to try an accused depend upon *proof* that the crime charged was committed within the court's jurisdiction (*People* v. *Fein*, 292 N. Y. 10, 12, 13; *People* v. *Di Lorenzo*, 301 N. Y. 374; *People* v. *Hetenyi*, 277 App. Div. 310, affd. 301 N. Y. 757).

The doubts I entertain are not resolved by the statement of petitioner's counsel relied upon by the majority, in his affidavit in support of the petition, that the case presented by the People "consisted of calling various witnesses to testify as to certain bathing suits which were recovered in the petitioner's home in Hollis, Queens". If the statement was intended to tell us that witnesses testified the bathing suits were recovered in Queens County, it is inaccurate; the transcript contains no such testimony. If it was intended to impugn the accuracy of the transcript, or to furnish information dehors the County Court record, it is contested by respondents' sworn answer, which incorporates the transcript and must be taken as declaring its accuracy. And in any event the statement would seem to have no bearing on the County Court's jurisdiction over the count for receiving.

Petitions for the remedy here sought — tantamount to an injunction against enforcement of a criminal statute — are traditionally viewed with great caution (*People ex rel. Hummel* v. *Trial Term*, 184 N. Y. 30; *Reed* v. *Littleton*, 275 N. Y. 150; *Matter of Cooley* v. *Wilder*, 234 App. Div. 256). "The remedy is an extraordinary one which lies within the discretion of the court" (*Matter of Culver Contr. Corp.* v. *Humphrey*, 268 N. Y. 26, 39). I agree that, in a double jeopardy case, relaxation of the customary reluctance to grant the remedy is a proper exercise of discretion. But a clear right to the relief should be established (*Triangle Mint Corp.* v. *Mulrooney*, 257 N. Y. 200, 201; *People* v. *Canal Board*, 55 N. Y. 390, 394–395). This, I believe, has not been done.

BREITEL and MCNALLY, JJ., concur with STEVENS, J.; BOTEIN, P. J., dissents and votes to deny the application, in opinion in which STEUER, J., concurs.

Application granted and writ directed to issue. Settle order on notice.