Julian R. Hanley, J.
One August evening the Pendletons entertained with a backyard clambake at their home. Finally, at an early morning hour the guests had all gone home, leaving Pendleton and his wife Virginia alone at the scene. Came morning and only Pendleton was left. Virginia was gone and only the barbecue pit knew. Later that day Virginia’s charred remains were found in the ashes of the fire pit.
Pendleton was tried for her murder. At the conclusion of the People’s evidence, the Trial Judge dismissed the charges, ruling that there was insufficient proof to corroborate his confession. Following this court dismissal, the District Attorney appealed.
CPL 450.20 (subd 2) allows such an appeal "as of right by *504 the people from * * * a trial order of dismissal”. On the appeal, the Appellate Division (People v Pendleton, 42 AD2d 144) overruled the Trial Judge’s dismissal and found that there was sufficient evidence for the case to go to the jury. The Court of Appeals dismissed the appeal from this decision (People v Pendleton, 35 NY2d 690).
So, pursuant to the statute and the rulings of the appellate courts, Pendleton was retried. At the second trial the evidence was completed and the jury found him guilty of manslaughter first degree. The result of this was that Pendleton was received in Attica January 28, 1975, where he is now serving his sentence of 5 to 15 years. The defendant has filed a notice of appeal to the Appellate Division, Fourth Department, from his present conviction.
Now came the decision of the United States Supreme Court, United States v Jenkins (420 US 358), which held that if there is a Judge’s dismissal following a bench trial, the People cannot appeal. The court ruled that if the prosecution were allowed to appeal the court’s dismissal this could result in a new trial after an acquittal, and would be unconstitutional because of double jeopardy.
A second Federal decision in the Eighth Circuit Court of Appeals, the so-called "Wounded Knee” case, published shortly thereafter, was even more directly in point with Pendleton’s situation. There, the Trial Judge had made an order of acquittal after all the proof was in. The United States Attorney appealed under the provisions of section 3731 of title 18 of the United States Code. The court held that the statute allowing the prosecution to appeal in this situation was unconstitutional, since it would allow a second trial after one acquittal and would be double jeopardy. (United States v Jaramillo, 510 F2d 808.)
Apparently, the Jenkins (supra) decision and others alerted relator to the idea that the similar New York statute (CPL 450.20) allowing the State to appeal was also unconstitutional. The present habeas corpus proceeding was filed claiming that the original appeal by the People in his case and the retrial after the first dismissal was double jeopardy.
Now, after the retrial is over, this double jeopardy question is being seriously raised for the very first time. Apparently it was obliquely mentioned when the case was before the Court of Appeals but the question was not passed on by them. This prisoner has had a trial, two appeals and a retrial without *505 any court or Judge considering the question of double jeopardy. Now, after all of this has taken place, the Appellate Division, Fourth Department, where Pendleton’s case was first appealed to, has now recognized that CPL 450.20 is unconstitutional and has ruled in two other cases that the prosecution can not appeal from a trial order of dismissal. (People v Piazza, 47 AD2d 990; People v Gesegnet, 47 AD2d 333.)
Strangely enough, a look at the old cases shows that since 1912 it has been the New York rule that a trial order of dismissal bars any appeal by the People because of double jeopardy. The rule was early born in a case involving a defendant named Goldfarb. He was charged with disorderly conduct. His trial began and one policeman had testified when the Magistrate halted the trial, dismissed the charge and ordered a new information to be filed. On the retrial, the defendant pled double jeopardy but was overruled and convicted. The Appellate Division reversed the Magistrate’s decision, saying: "It is well settled that where the court directs an acquittal, no matter how erroneously, the defendant cannot be subsequently tried on the same charge.” (People v Goldfarb, 152 App Div 870, 874.)
This decision was affirmed by the Court of Appeals (People v Goldfarb, 213 NY 664) and has been consistently followed by the courts ever since. (Matter of Nolan v Court of Gen. Sessions, 11 NY2d 114; Matter of Snee v County Ct. of County of Cayuga, 31 AD2d 303; People v Gehlberd, 272 App Div 914; Matter of Mack v Court of Gen. Sessions of County of N. Y., 14 AD2d 98; People v Tallman, 193 Misc 563; People v Nikiel, 2 Misc 2d 551.)
The framers of New York’s present Criminal Procedure Law apparently chose to ignore the fact that, for all these years the New York courts have held that a retrial after a trial order of dismissal would be double jeopardy and unconstitutional because they went ahead and enacted CPL 450.20 anyway.
If you read the Practice Commentary under CPL 450.20 (subd 2), the author does admit that subdivision 2 "is new and doubtless controversial” and then refers you to the comments under CPL 290.10. (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 450.20, p 380.) There, the reviser at least mentions constitutionality, but says "[s]uch a contention probably would not be sound.” (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book *506 11 A, CPL 290.10, pp 526, 528.) Nothing in the statute itself or the commentaries alerts you to the fact that this law violates both the State and Federal Constitutions.
So what do we have here now? Virginia is dead and the jury has said that beyond any reasonable doubt this prisoner was the cause of her death and impromptu cremation.
After both of Pendleton’s trials are all over, the courts now admit that the statute allowing the prosecution’s appeal was unconstitutional. That being so, his later conviction and present sentence is illegal and void.
But, "Wait” now argues the State. "The man never claimed double jeopardy before. He should have objected at his second trial. He has waived his right and must stay in jail, unconstitutional trial or not.”
What kind of reasoning is that?
You can go to the legal precedent shelf and see that there does exist a general rule that an accused can waive the protection against double jeopardy if he fails to interpose the defense at the second trial.
Why such a general rule? One thought is that a defendant should not be allowed to sit idly by during his trial and then, upon conviction, raise a special defense that he could have raised at the beginning of his trial. This, it has been said, would "be termed trifling with the court.” (People v Bennett, 114 Cal 56, 58.)
The idea behind this is that the Trial Judge should be alerted at the beginning to any double jeopardy claim so he can determine any factual issue and so avoid a second trial then and there.
Another theory calling for the double jeopardy defense to be raised at the trial level is to avoid the situation where there is a guilty plea and then often years later, the prisoner attempts to raise the double jeopardy question for the first time. Courts have generally resisted this. (People v Allen, 18 AD2d 840; People ex rel. Williams v Follette, 30 AD2d 693, affd 24 NY2d 949; People v La Ruffa, 37 NY2d 58.)
However, decisions on double jeopardy waiver have not been consistent in the courts. For example, in People v De Mino (35 AD2d 979) the New York finding was: "The defense was available at the time of defendant’s second trial. His failure to present the issue then precludes the assertion of it many years [later]”. The Court of Appeals affirmed on the grounds *507 that "[he] interposed no objection.” (People v De Mino, 29 NY2d 602, 603.) The case was taken to the United States Supreme Court, who have the last word on this matter, and they reversed the New York decisions. (De Mino v New York, 404 US 1035.)
We have been dealing so far with the legal theory of "waiver” of a double jeopardy constitutional defense. If you are going to have a waiver, it must be just that, a waiver. A waiver has to be "an intentional relinquishment or abandonment of a known right”. (Johnson v Zerbst, 304 US 458, 464.) " 'Waiver’ is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right.” (Green v United States, 355 US 184, 191; emphasis supplied.)
Each case involving a claim of waiver of a constitutional defense must be decided on the circumstances of each one (22 CJS, Criminal Law, § 277, p 710, n 17.15) and "[courts] indulge every reasonable presumption against the waiver”. (Glasser v United States, 315 US 60, 70.)
Pendleton’s situation does not fit either of these two classes of double jeopardy waiver cases. He did not plead guilty or wait for years to raise his cry of double jeopardy. Neither did Pendleton or his counsel intentionally or carelessly conceal a double jeopardy defense at his second trial.
Instead of theory, what are the legal facts of this case?
We had a New York statute (CPL 450.20) that allowed the prosecutor to appeal Pendleton’s court dismissal. Nobody knew that this law was unconstitutional. The case went before five learned Appellate Division Judges, seven likewise learned Judges of the Court of Appeals, a second Trial Judge and at least two sets of attorneys. None of these recognized that double jeopardy applied. Everybody appears to have accepted the statute as being valid so that the second trial took place.
How can we say that this defendant purposely waived his right to claim double jeopardy when, obviously, neither he nor the various Judges connected with his case knew he even had such a defense? If he did not know he had the defense how could he waive it? Certainly in this case there was no intelligent and voluntary waiver of a double jeopardy claim. To imply a waiver here would be simply to be using a legal fiction.
*508 The last argument against the granting of the petition is the State’s claim that habeas corpus is not the proper remedy pointing out that Pendleton has an appeal pending. This is a nice sounding legal argument unless you happen to be the one unconstitutionally imprisoned. True, habeas corpus should not be a substitute for an appeal. (People ex rel. Keitt v McMann, 18 NY2d 257.)
The appellate courts normally are the places to consider errors on a trial record. Here, double jeopardy was not brought up at the trial and so we are not considering a matter involved in the trial record.
His claim of error is entirely constitutional, an outside question of constitutional law and not involved in the mechanics of his trial. New York, as well as the Federal courts, have recognized habeas corpus as a proper remedy on a claim of double jeopardy. (People ex rel. Stabile v Warden of City Prison of City of N. Y., 202 NY 138; People ex rel. Kuney v Adams, 280 NY 794; Burns v Wilson, 346 US 137; People ex rel. Epting v Devoe, 206 Misc 278, revd on other grounds 284 App Div 1092, affd 309 NY 818; see, also, People ex rel. Keitt v McMann, 18 NY2d 257, supra.)
Accordingly, it is ordered, that the petition is granted and the relator is ordered discharged from custody forthwith.