Chief Judge Fuld.
Patricia Gates was stabbed to death in the early morning hours of September 7, 1966, in her apartment in the Village of Spring Valley. The defendant, her estranged husband, was charged with the killing and convicted of murder in the first degree. Of the several questions raised on this appeal, we are, primarily, concerned with that involving the sufficiency of the evidence of the defendant’s guilt.
Mrs. Gates had, in June of 1966, obtained a decree of separation from her husband which awarded her custody of their four children. As they left the courthouse, Gates told his wife, in the presence of her lawyer, “You will never live to enjoy the children. I will see to it myself.” During his periodic visits with the children, there were further bitter interchanges and disputes over the custody of the children and, on one occasion, he confided to a neighbor that, “ [i]f he could get rid of his wife, he would have his children and he wouldn’t have any more problems.” On September 4, 1966, the day after a Mexican divorce decree had been entered giving the mother permanent custody, Gates threatened her again, saying, ‘‘ [y] ou better enjoy the kids while you have them. You won’t have them for long. I will.”
Three days later, Patricia Gates was dead, the victim of a brutal attack.
*668 Shortly before 1:00 a.m. on September 7, a neighbor and a police officer, who had both been attracted to the scene by screams, forced open the door of Mrs. Gates’ apartment and found her in her bed lying in a pool of blood from several knife wounds. The victim, who was still conscious, stated that she did not know who had attacked her and, when specifically asked if it was her husband, replied, “ I don’t know, but he wore glasses.” [1] She died from her wounds a short time later.
About a half hour after his wife was stabbed, the defendant appeared at a neighbor’s house, approximately a half mile from Mrs. Gates’ apartment, and, after unsuccessfully urging his neighbor to join him, drove into the business district of Spring Valley. There, at about a quarter to two, he was stopped by a police officer for failing to dim his headlights. The officer took his license and registration and, noting his name, placed him under arrest on a charge of assault.[2] Gates was taken to police headquarters and, without protest, he was fingerprinted.
The investigation 'conducted by the police at the scene of the crime revealed that the bathroom window, overlooking the backyard, had been opened and the screen removed. A set of fingerprints, apparently fresh, were found on the screen positioned in such a manner that they could only have been made by someone standing on the outside and pulling the screen from its place. A pahnprint, with the fingers pointing into the room, was also found on the bathroom windowsill. The palmprint and one of the fingerprints matched those taken from Gates at the time of his arrest.
It was the People’s theory that the defendant had entered the house through the bathroom window, taken a knife from the kitchen and attacked his former wife while she was asleep; that he fled the scene when she screamed for help and ran through the woods to his house, a half mile away, where he showered, changed and disposed of his bloody clothes; and that he finally *669 went to the neighbor’s home and engaged in conversation in order to establish an alibi.[3]
As already stated, the jury found the defendant guilty of first degree murder and the Appellate Division unanimously affirmed the resulting judgment of conviction. In our view, the evidence adduced was sufficient to establish the defendant’s guilt beyond a reasonable doubt. When, in a criminal case, the sole evidence of guilt is circumstantial, “ its sufficiency ”, we wrote in People v. Leyra (1 N Y 2d 199, 206), “ depends upon ‘ whether the proof points logically to defendant’s guilt and excludes to a moral certainty, every other reasonable hypothesis ’.” (See, also, People v. Yazum, 13 N Y 2d 302, 304; People v. Harris, 306 N. Y. 345, 351; People v. Taddio, 292 N Y. 488, 489.) Whether the defendant’s threats against his wife and his expressed desire to ‘ ‘ get rid ’ ’ of her would have been enough to warrant the verdict of guilt, there can be no doubting the almost conclusive force of the fingerprint evidence. The defendant’s palm and finger prints were located on the window through which the murderer apparently entered the house. Such proof, not susceptible of any other explanation, pointed ineluctably to the defendant’s guilt and was sufficient to exclude to a moral certainty any other reasonable hypothesis.[4]
Recognizing the importance of the fingerprint evidence, the defendant urges that it should not have been received against *670 him at the trial because he had been unlawfully arrested and the fingerprints taken while he was being illegally detained. In the light of the Supreme Court’s recent decision in Davis v. Mississippi (394 U. S. 721), there can be no doubt that fingerprint evidence is “ subject to the proscriptions of the Fourth and Fourteenth Amendments ” and that such evidence is to be excluded if it be the product of an illegal arrest (394 U. S., at p. 723). However, the fact is that Gates failed to challenge the admissibility of his fingerprints on the ground that they were the fruit of an unlawful arrest either by pretrial motion to suppress— as mandated by our practice (Code Crim. Pro., § 813-c) — or by objection at the trial to their receipt. This being so, it follows that the question is not preserved for our review upon appeal from the conviction. (See People v. Friola, 11 N Y 2d 157.)[5]
The need to voice an objection in order to raise a question such as this is demonstrated by the present case. Although the defendant now asserts that his arrest was unlawful, his failure to object to the use of the evidence on that ground, or even to intimate that such an issue was in the case, deprived the People of any opportunity to show the information in the possession of the police at the time of Gates ’ arrest. It may well be that, when the arrest was effected—■ though only 45 minutes after the commission of the crime — the police had already gathered facts, such as the defendant’s threats against his wife, which actually furnished reasonable grounds for believing that he had committed the crime. Certainly, on the basis of the record now before us, we should not presume otherwise.[6]
*671 As to the other arguments urged upon us by the defendant, it is enough to say that we have examined them and find them without substance.
The judgment appealed from should be affirmed.
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
Judgment affirmed.

. The defendant, according to many witnesses, usually wore eyeglasses.

. Since no issue was raised as to the legality of the arrest upon the trial, or prior thereto, we are in the dark as to the evidence or information which the police had at the time the defendant was taken into custody.

. The District Attorney also introduced evidence that, although Gates asked his neighbor for a cigarette, he had two partially opened packs at home; that he was wearing no underclothing when he was arrested; that he smelled of soap and that there were signs that his shower had recently been used.

. The defendant, it is true, had been a fairly frequent visitor at his wife’s apartment but the location of the prints was such that they could only have been made by a person seeking to climb in through the window from the outside. Defense counsel, in a valiant effort to explain away this fact, theorizes that the defendant, while visiting his children during July and August, might have been accidentally locked out and might have had to gain entry into the house through the bathroom window. This theory was refuted by the actual proof. The workman who had installed the screen testified that it had been washed and nailed into place in April— some five months before the homicide — that he had worked around the house on several occasions during the summer, including the very afternoon before Mrs. Gates was killed, and that he had never seen the screen out of place. The victim’s upstairs neighbor confirmed the workman’s testimony that it was firmly in place throughout the summer, including the day before the killing.

. In the Davis case, relied upon by the defendant, the Supreme Court expressly noted that the evidence was admitted “ over petitioner’s timely objections that the fingerprints should be excluded as the product of an unlawful detention ” (394 U. S., at p. 723) and, although no hearing was held on the question, it was conceded, for purposes of appeal, that probable cause for the arrest was lacking (394 U. S., at p. 723; cf. People v. Morales, 22 N Y 2d 55, 58, cert, granted 394 U. S. 972).

. We need not now consider whether the defendant would be entitled to a posteonvietion hearing to determine the factual circumstances attending his apprehension. (Cf. Kaufman v. United States, 394 U. S. 217.)