THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DARRYL BROOKS, Respondent.

Second Department, December 22, 1975

*Carl A. Vergari, District Attorney (Janet Cunard* of counsel), for appellant.

*Natale & Rosen* for respondent.

SHAPIRO, J. The People appeal from a trial order of dismissal of the County Court, Westchester County, which dismissed all counts of an indictment charging the defendant with the crimes of manslaughter in the first degree, assault in the first degree, and possession of a weapon, dangerous instrument and appliance, as a misdemeanor. We reverse and order a new trial.

## PRELIMINARY STATEMENT

During the trial, the court ruled that certain statements made through the use of sign language by the defendant, a deaf-mute, in which he admitted the commission of the crimes charged in the indictment, would be excluded from evidence because they were obtained by a certified social worker in violation of CPLR 4508. With that testimony excluded, the People concededly could not establish their charges and, consequently, the defendant's motion, made pursuant to CPL 290.10 for a trial order of dismissal, was granted on the ground "that the evidence does not connect the defendant with the commission of the crimes which are alleged in the indictment".

In our opinion, under the circumstances of this case, the communications in question were not privileged.

The sole issue briefed by the parties on this appeal was the propriety of the trial court's determination. However, the troublesome question of whether CPL 450.20 (subd 2), which permits an appeal by the People from a trial order of dismissal, violates the double jeopardy provision of the United States Constitution was not adverted to by either side. Despite that fact, and in view of the overriding importance of the

issue and its basic effect on the People's right to appeal, we, *sua sponte,* address ourselves to that question.

## IS CPL 450.20 (SUBD 2) CONSTITUTIONALLY VALID?

The Fifth Amendment of the United States Constitution provides that no "person be subject for the same offence to be twice put in jeopardy of life or limb".[1] Its naked wording suggests no more than that no person may be reprosecuted after a judgment of acquittal or conviction (cf. *North Carolina v Pearce,* 395 US 711, 717). However, under decisional law, it is now well settled that jeopardy attaches in jury trials when a jury is impaneled and sworn and, in nonjury trials, when the court begins to hear evidence *(Serfass v United States,* 420 US 377, 388). Thus, once jeopardy has attached, the prosecution is forever barred from a second opportunity to convict the accused *unless retrial can be justified under some exception to the double jeopardy rule* (Ann 6 L ed 2d 1510). Accordingly, the fact that jeopardy has attached, begins rather than ends the inquiry whether the double jeopardy clause bars a retrial, for the prohibition against being placed in double jeopardy does *not* mean that every time a defendant is put to trial before a competent tribunal he is permitted to go free if the trial fails to end in a final judgment *(Wade v Hunter,* 336 US 684, 688; *Gori v United States,* 367 US 364). The test is whether the trial was aborted for a "manifest necessity"[2] or whether "the ends of public justice would otherwise be defeated" *(Downum v United States,* 372 US 734).

In certain situations the test of "manifest necessity" meets with little difficulty. These include the hung jury. *(Logan v United States,* 144 US 263); disqualification of a juror *(Simmons v United States,* 142 US 148); death or other incapacity of the Trial Judge *(United States v Bigelow,* 14 DC [3 Mackey] 393); and tactical needs of the military in time of war *(Wade v Hunter, supra).* It is apparent, therefore, that the right to reprosecute admits of no challenge whenever a trial is terminated because of an unforeseeable breakdown in the judicial machinery, even though jeopardy has attached. However, difficulty in the application of the double jeopardy principle arises when a Judge, in the exercise of discretion, declares a

---

1. In *Benton v Maryland* (395 US 784) the court held that the provision against double jeopardy is applicable to the States via the Fourteenth Amendment.

2. The manifest necessity doctrine first appeared in Justice STORY's opinion in *United States v Perez* (9 Wheat [22 US] 579).

mistrial in what he considers to be the cause of justice. Under such circumstances, the Supreme Court of the United States initially accorded the Trial Judge wide latitude, justifying retrial on the ground that it was being directed in furtherance of the ends of justice and in the defendant's interest (albeit without his consent and even over his objection). Thus, in the absence of clear and patent abuse, the Supreme Court was unwilling to second-guess the Trial Judge in his exercise of judicial discretion in such a situation (see *Gori v United States,* 367 US 364, *supra).* In *Gori,* the Trial Judge, *sua sponte,* declared a mistrial in order to forestall a line of questioning which he thought was directed toward a disclosure of other crimes committed by the accused. The objectionable matter was never in fact presented to the jury. In sanctioning a retrial, the Supreme Court said (pp 368–369):

" 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served'
* * *

"Judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge may be abused and so call for the safeguard of the Fifth Amendment —cases in which the defendant would be harassed by successive, oppressive prosecutions, or in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused."

Not long after *Gori,* the court did an about-face and severely limited the right of a Trial Judge to declare a mistrial under similar circumstances (see *Downum v United States,* 372 US 734, *supra).* Although recognizing that at times the right of a defendant to have his trial completed by a particular tribunal summoned to sit in judgment on him may be subordinated to the public interest, the court there laid down the rule that there must be an "imperious necessity" to do so, saying (p 736): "Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches * * * But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised 'only in *very extraordinary and striking circumstances'* * * * For the prohibition of the Double Jeopardy Clause is 'not against being twice

punished, but against being twice put in jeopardy'" (emphasis supplied).

In *Downum,* a jury was selected and sworn and then instructed to return that afternoon. When it returned, the prosecution asked that the jury be discharged because its key witness as to two of the eight counts was not present. The petitioner requested that the two counts be dismissed for want of prosecution, with the trial to continue as to the other counts. The trial court discharged the jury. Two days later a second jury was impaneled, but petitioner pleaded former jeopardy. The plea was overruled and petitioner was tried and found guilty. The Supreme Court held that reprosecution was barred on the ground that the absence of the witness, on those facts, did not justify a mistrial. The court noted that the witness was essential for only two of the six counts, yet the prosecution had opposed the motion to dismiss those counts and to proceed to trial on the remainder.

The Supreme Court has subsequently applied its more rigorous approach in *Downum* to other proceedings prematurely aborted by the trial court's declaration of a mistrial over the defendant's objection (see, e.g., *United States v Jorn,* 400 US 470). In *Jorn,* the Trial Judge ordered a mistrial after the first witness had been called, but prior to the commencement of cross-examination, in order to provide the prosecution witnesses with the opportunity to consult attorneys concerning their right against self incrimination, even though the prosecutor asserted (and the witnesses concurred) that the right had been explained. The case was set for retrial before another jury, but on pretrial motion by the defendant the information was dismissed on the ground of double jeopardy. In affirming, the Supreme Court said (p 487): "It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial."

An example of "manifest necessity" was considered by the

Supreme Court in *Illinois v Somerville* (410 US 458). In that case, before any evidence was presented, but after the trial had begun, it was ascertained that the indictment contained a defect which, under Illinois law, could not be cured by amendment and which could be asserted on appeal to overturn a judgment of conviction. The Trial Judge declared a mistrial over the defendant's objection, following which the defendant was reindicted, tried and convicted. He thereafter petitioned for habeas corpus relief on the ground that the second trial violated his constitutional right against being placed in jeopardy twice for the same offense. In denying him relief, the Supreme Court said (p 471): "The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one * * * *Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration * * * But where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice"* (emphasis supplied).

So too, in the case of jurisdictionally defective proceedings, reprosecution is not barred on the theory that the verdict in the original trial would have been a nullity (see *United States v Ball*, 163 US 662 [dictum]; *Johnsen v United States*, 41 F2d 44, cert den 282 US 864).

Two decisions *(United States v Wilson*, 420 US 332; *United States v Jenkins*, 420 US 358) contain the Supreme Court's most recent pronouncements on the prohibition against double jeopardy as it functions to bar reprosecution. In *Wilson*, after the jury had returned a verdict of guilty, the trial court granted defendant's postverdict motion to dismiss the indictment because of prejudicial delay between the offense and the indictment. The Circuit Court of Appeals dismissed the Government's appeal as barred by the double jeopardy clause. The Supreme Court reversed, holding that the Government's appeal did not violate the defendant's double jeopardy rights. The court reasoned that review of a judgment of acquittal is

barred if it would expose a defendant to the risk of a second trial after the finder of fact had ruled in his favor in the first. However, where (as on the *Wilson* facts) a successful appeal by the Government would merely *reinstate* a guilty verdict, the defendant's constitutional right against being twice tried for the same offense was not infringed.

In *Jenkins (supra)*, decided at the same time as *Wilson*, the Circuit Court of Appeals had dismissed an appeal on the ground of double jeopardy. The indictment against Jenkins had been dismissed following a bench trial. The trial court had filed written findings of fact and conclusions of law which determined that the criminal prosecution of the defendant could not be tolerated because his acts, when committed, were in accord with the then prevailing law.

In affirming the dismissal of the Government's appeal, the Supreme Court said (pp 369–370): "Here there was a judgment discharging the defendant, although we cannot say with assurance whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause * * * that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings. The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent's favor. To subject him to any further such proceedings at this stage would violate the Double Jeopardy Clause".

Thus, *Wilson* stands for the proposition that where there has been a jury verdict of guilty which has been set aside by the trial court on questions of law, the double jeopardy clause does not apply, since the error in setting the verdict aside may be corrected and the guilty verdict reinstated without a second trial. *Jenkins* stands for the proposition that when there has been an *acquittal* by a Judge sitting without a jury based upon an erroneous application of the law to the facts, a retrial of the defendant will be barred by the double jeopardy clause of the Constitution.

With this "double jeopardy" background, we now turn to the issue at hand, i.e., the relationship between double jeopardy and the People's statutory right to appeal from a trial order of dismissal.

CPL 290.10 (subd 1) provides: "At the conclusion of the people's case or at the conclusion of all the evidence, the court may * * * issue a 'trial order of dismissal,' dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense."

CPL 450.20 states:

"An appeal to an intermediate appellate court may be taken as of right by the people from the following sentence and orders of a criminal court: * * *

"2. A trial order of dismissal, entered pursuant to section 290.10 or 360.40".

Clearly, CPL 450.20, if it does not run afoul of the double jeopardy provisions of the Constitution, represents a reasonable exercise of legislative authority, for it seeks to remedy the situation in which an erroneous determination of law by a trial court resulted in the improper termination of a trial. Moreover, from the standpoint of the constitutional protection against double jeopardy, the trial order of dismissal might find possible justification by analogy to the declaration of a mistrial. Thus, when the Trial Judge prematurely terminates the trial of a criminal proceeding by ordering a dismissal *on the law,* he takes the case from the fact finder just as he does when declaring a mistrial and, as previously noted, a mistrial occasioned by some manifest necessity does not bring the double jeopardy bar to reprosecution into play. However, a trial order of dismissal (as distinguished from a mistrial) possesses the unique characteristic of eventuating in a dismissal of the indictment (or a count thereof) and in the entry of judgment in the defendant's favor. The trial here having concluded in that manner, it could be argued that to permit the People to appeal would indeed expose the defendant to double jeopardy, although the defendant has not been "acquitted" in the sense that the trier of fact has absolved him of guilt. It is nevertheless true that if the District Attorney is successful on this appeal, the defendant would have to go through the rigors of a second trial despite the fact that the first terminated with a finding that the prosecution did not have sufficient evidence to convict.

Essentially, that was the view adopted by the First and Fourth Departments (see *People v Gesegnet,* 47 AD2d 333; *People v Piazza,* 47 AD2d 990; *People v Brown,* 48 AD2d 95). Because of the *judgment* aspect of the trial order of dismissal,

those decisions rely upon the Supreme Court decisions in *United States v Jenkins* (420 US 358, *supra)* and *United States v Wilson* (420 US 332, *supra),* although neither *Jenkins* nor *Wilson* concerned a situation in which judgment was entered after the matter had been *removed* from the trier of the facts.

As stated by the Fourth Department in *Gesegnet* (pp 336–337): "In the case now before us, after a jury was sworn and all of the People's testimony was taken, the Trial Judge found the proof to be insufficient as a matter of law. In a jury trial jeopardy attaches when the jurors are empaneled and sworn * * * For purposes of appealability it does not matter whether the court's decision was based entirely upon the facts, upon a conclusion of law to be drawn from the facts, or entirely upon the law. It is sufficient that any appeal by the People under CPL 450.20 (subd 2) would, if successful, result in the necessity of holding a second trial and would therefore subject a defendant to double jeopardy, as that term has been defined in *Wilson* and *Jenkins".*

The First Department, in its decision in *People v Brown (supra),* relied heavily upon an older Supreme Court decision, *Fong Foo v United States* (369 US 141), to support its treatment of the trial order of dismissal as equatable with an acquittal by the trier of fact for double jeopardy purposes. In so doing, in my opinion, the *Brown* court misinterpreted the basis of the holding in *Fong Foo.* There, the Supreme Court, in a *Per Curiam* opinion, dealt with a situation in which, after seven days of what promised to be a long and complicated trial, and after three government witnesses had appeared and a fourth was in the process of testifying, *the District Judge directed the jury to return verdicts of acquittal as to all of the defendants, and a formal judgment of acquittal was subsequently entered.*

In upholding the defendant's double jeopardy contention the court emphasized that there had been an "acquittal" by a jury, albeit at the direction of the trial court. It said (p 143): "The petitioners were tried under a valid indictment in a federal court which had jurisdiction over them and over the subject matter. The trial did not terminate prior to the entry of judgment * * * It terminated with the entry of a final judgment of acquittal as to each petitioner. The Court of

Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, '[t]he verdict of acquittal was final, and could not be reviewed * * * without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution.' "

Because of the "acquittal" by the jury, *Fong Foo* is not relevant to the question of the applicability of the double jeopardy clause as it relates to a trial order of dismissal.

In holding that no appeal lies from a trial order of dismissal, the two Appellate Divisions rejected the implied holding of our Court of Appeals in *People v Sabella* (35 NY2d 158), which was decided prior to the decisions in *Jenkins* and *Wilson,* that CPL 450.20 (subd 2) is constitutional.

*Sabella* dealt with two nonjury cases. In the first *(People v Fellman,* 35 NY2d 158, 162), the trial court granted the defendant's motion for a trial order of dismissal at the end of the People's case, holding that even " 'assuming for the purpose of this motion that all of the evidence favoring the People is credible' ", the circumstantial evidence was of " 'no effect [since] it is consistent with both the hypothesis of innocence and the hypothesis of guilt.' "

In the second case *(Sabella),* both sides rested at the close of a nonjury trial and the defendant summed up, requesting a judgment of acquittal on the ground that the People had failed to prove him guilty of contempt beyond a reasonable doubt. Later, delivering an opinion from the bench, the trial court reviewed the evidence at length and, whereas it found that under the facts and circumstances disclosed by the trial record the defendant had acted in good faith, it went on to state that the defendant was not guilty, as a matter of law, and dismissed the indictment pursuant to CPL 290.10 (subd 1).

The Court of Appeals held that although the judgments in both cases were entered upon trial orders of dismissal, the judgment in the first case was appealable whereas the judgment in the second was not. The court reconciled these diverse results by pointing out that although the Trial Judge in the second case had styled the holding as a dismissal on the law, the defendant was clearly *acquitted on the merits,* thereby precluding appellate review under the double jeopardy provision.

However, having reached the conclusion that the dismissal

in the first case was on the law, the Court of Appeals proceeded to apply CPL 450.20 (subd 2) to authorize the appeal without reference to the double jeopardy question. In discussing the history of CPL 450.20 (subd 2), the court said (pp 164–167):

"Under prior law the court could order a directed acquittal '[i]f at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction'. (Code Crim. Pro., § 410.) And although this called for a ruling on the law, the People could not appeal even if it was clearly based on an erroneous view of the law *(People v Marra,* 13 N Y 2d 18). The appeal was specifically prohibited by statute (Code Crim. Pro., § 518, subd. 3).

"The directed acquittal concept was carried forward into CPL 290.10 where it is now termed a trial order of dismissal. The portion of that statute applicable to these appeals states: 'At the conclusion of the people's case or at the conclusion of all the evidence, the court may * * * upon motion of the defendant, issue a "trial order of dismissal," dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.' Despite the change of name the Legislature apparently intended to merely restate prior law with some elaboration but without changing the substance of the statute (see Denzer, Practice Commentary to CPL 290.10, McKinney's Cons. Laws of N.Y., Book 11A).

"The novel feature is that the People may now seek review of the court's determination. This is specifically authorized by CPL 450.20 (subd. 2) which states: 'An appeal to an intermediate appellate court may be taken as of right by the people from * * * [a] trial order of dismissal, entered pursuant to section 290.10 or 360.40'. According to the legislative commission staff which drafted the present statute, this 'change stems from the apparent injustice of denying the People any remedy when the trial court dismisses a charge during trial upon the basis of an erroneous determination of law that the trial evidence does not establish a prima facie case. An order erroneously dismissing an indictment upon the basis of allegedly insufficient grand jury evidence, being a final judicial determination against the People, may properly be reversed and vacated upon an appeal by the People * * * yet, a comparable and equally final and erroneous order with respect to trial evidence leaves the People helpless, and unconditionally frees a defendant against whom a prima facie case has been fully proven. This unsalutary gap in the present law would be closed by a subsequent proposed provision according a right of appeal in such cases'. (Commission Staff Comment to Proposed CPL 150.20.)* * *

"*In sum everything points to the conclusion that the defendant received precisely what he requested, a dismissal on the law which effectively aborted the trial short of verdict. Under these circumstances the statute grants the People the right to appeal, and we must determine whether the court was correct in holding that the evidence produced at trial was legally insufficient to establish the crime of perjury*" (emphasis supplied).

Subsequently, upon a motion to amend the remittitur, the Court of Appeals said: " 'Upon the appeal herein there was

presented and necessarily passed upon a question under the Constitution of the United States, viz.: Respondent argued that CPL 450.20 (subd 2) allowing the prosecutor to appeal a trial order of dismissal (CPL 290.10) entered at the defendant's request in a nonjury case, violates the double jeopardy clause of the Fifth Amendment.' The Court of Appeals considered this contention and found that there was no violation of the defendant's constitutional rights" *(People v Fellman,* 35 NY2d 853).

As previously noted, the Court of Appeals did not have the benefit of the Supreme Court's rulings in *Wilson* and *Jenkins* either at the time of its original decision or when it granted the motion to amend the remittitur; the Fourth Department relied upon those decisions, and their alleged superseding effect upon *Fellman,* in coming to its conclusion that trial orders of dismissal are constitutionally not appealable.[3] I am not convinced that either *Wilson* or *Jenkins* mandates the result reached in *Gesegnet* and *Brown.*

*Wilson* and *Jenkins* both stand for the proposition that we must approach the question of appealability from the standpoint of the constitutional right of the individual to be free of repetitious trials after jeopardy attaches, *while recognizing that there are limited exceptions where a retrial does not offend the double jeopardy clause.* In this case, the trial was aborted by the trial court's ruling, via the procedural device of a trial order of dismissal, that the evidence was insufficient *as a matter of law.* That result eventuated because the trial court, *on the defendant's motion,* erroneously excluded from evidence proof essential to the People's development of its case. A statute which has been enacted to ameliorate and overcome such an unjust result, having as its sole purpose the promotion of the proper administration of justice, should not be deemed to run afoul of the double jeopardy provision of the Constitution, for it arises out of a manifest necessity in the administration of the criminal law. The fact that the trial order of dismissal, *as a matter of form,* ends in a judgment rather than a declaration of mistrial should not blind us to its true function. A "mechanical rule" preventing a retrial under such circumstances is "too high" a price to pay for the added assurance of personal security and freedom from government

---

3. The First Department in the *Brown* case did not refer to *People v Sabella (supra).*

harassment which such a mechanical rule would provide (see *United States v Jorn,* 400 US 470, 480, *supra).*

In my opinion, the Supreme Court's decisions do not preclude appeals from trial orders of dismissal on double jeopardy grounds. Permission to appeal from such orders constitutes a legislatively authorized response to situations where there has been a premature termination of a trial. As in the case of a declaration of mistrial, the interests of public justice are thus given precedence and retrial is permitted if, on appeal, the Trial Judge is found to have committed legal error. I am reinforced in my conclusion that neither *Wilson* nor *Jenkins* was properly relied on in *Gesgenet* as being determinative holdings that appeal from a trial order of dismissal is constitutionally impermissible by the statement of the Supreme Court in its decision in *Serfass v United States* (420 US 377, *supra),* which was decided days after *Wilson* and *Jenkins.* The court, in *Serfass,* permitted an appeal by the United States from a *pretrial* order dismissing an indictment, although the dismissal was based not only on the accusatory instrument, but also upon an examination of other records and an affidavit setting forth the evidence to be adduced at trial. In so concluding, the court significantly added (p 394): "we of course express no opinion on the question whether a similar ruling by the District Court after jeopardy had attached would have been appealable."

It is apparent from that statement that the Supreme Court did not view either *Wilson* or *Jenkins* as compelling a conclusion that a trial order of dismissal "after jeopardy had attached" would constitute double jeopardy precluding an appeal and that that question is still an open one in that court.

In *People v Reed* (276 NY 5), which was decided in 1937, long before the enactment of CPL 290.10 (subd 1) and 450.20 (subd 2), the Court of Appeals affirmed a dismissal by this court of an appeal taken by the People from a judgment dismissing an indictment on questions of law *only* at the end of the People's case. What the court there said is most significant and appropriate to the question here under consideration. Said the court (p 14): "If the Legislature by this act of 1927 intended to extend the right of the People to appeal, it should at least be stated clearly enough for the courts to give it meaning. We are unable to find wherein the extension has

taken place or to what it applies. The right to appeal should not be left to inference or doubtful interpretation. The District Attorney suggests that this provision may have been intended to give the People the right to appeal from any ruling dismissing the indictment, or ending the case, which has not resulted in an actual acquittal by the jury upon the evidence. If this be the intent of the Legislature we fail to find it in these words, and hesitate to give a construction to them which in reason they do not bear. We must take these statutes dealing with crimes and procedure as they read, giving them a fair interpretation. Until the Legislature has seen fit to make the rights of the People on appeal more explicit and certain we must adhere to the practice as it has been, and rule that none of these provisions of sections 518 or 519 give to the People the right to appeal from the dismissal of the indictment in this case."

By its determination, the Court of Appeals clearly indicated that if the Legislature enacted an explicit and certain statutory provision giving the People the right to appeal from a dismissal of an indictment on questions of law only, such an appeal could be properly entertained. The Legislature has done just that by the enactment of the CPL sections here in question.

Those sections were not enacted as a one-way street in favor of the People. That they also serve as a benefit to a defendant can be seen by viewing the state of the law in New York prior to their adoption. In the *Reed* case, and because of its holding that no appeal could be taken by the People from a judgment of dismissal even though such a judgment was rendered purely on a question of law, the court said (p 9): "While the defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to any reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day. The defendant, for a wrong ruling, may always appeal the case for review to a higher court; the People have no such privilege, except as hereinafter stated. The trial justices in criminal cases, therefore, should bear this in mind when ruling upon points of law."

If the trial court in this case had followed that ruling of the Court of Appeals—as presumably it would have in the absence

of the CPL sections in question—its ruling on the admissibility of the proffered evidence in this case—the defendant's admission of complicity—would have been in favor of the People.

Under such circumstances, the basis for the dismissal here —the failure to connect the defendant with the commission of the crimes charged in the indictment—would not have been available to the defendant. Is it unfair therefore to say to a defendant who utilizes a statute that, by getting its benefit he also accepts the condition of its use, i.e., the right of the People to appeal? I think not, any more than a defendant who moves for or consents to a mistrial may not thereafter claim that his retrial constitutes double jeopardy.

Under the circumstances, and for the reasons previously stated, I have concluded that an appeal from a trial order of dismissal as authorized and sanctioned by CPL 450.20 (subd 2) is not constitutionally impermissible.

The trial order of dismissal should be therefore reversed and the case remanded for a new trial.

CHRIST, J. (dissenting). I dissent and vote to dismiss the appeal.

The facts are not complex. The trial commenced, a jury was selected and sworn, and a witness for the People testified under oath. Upon objection by the defendant that the testimony of the witness would disclose a confidential communication, the trial court held an extended hearing out of the jury's presence but as a part of the trial. At the close of that hearing, the trial court excluded the testimony concerning the confession or admission. Even though this testimony was barred, the prosecution proceeded with its case and called a further witness, the Medical Examiner of Westchester County, who testified as to the cause of death and the intoxication of the decedent.

When the People rested, the defendant moved for a trial order of dismissal, which order was granted upon the ground that the evidence did not connect the defendant with the crime.

There is no dispute that this trial proceeded sufficiently so that jeopardy attached. The question remaining is, was the trial left in such a posture that a retrial would place the defendant in double jeopardy? The Constitutions of the United States and the State of New York specifically provide that no

person shall "be subject for the same offence to be twice put in jeopardy of life or limb". This is precisely what will occur in this case.

I rest my dissent upon the law as pronounced in two recent cases decided by the United States Supreme Court, *United States v Wilson* (420 US 332) and *United States v Jenkins* (420 US 358), which are also referred to in the majority opinion.

Together, these cases clearly hold that if a new trial is required, so that a defendant must again, in a new court, have to meet the People's accusatory evidence, he will thereby be placed in double jeopardy. In *Wilson,* where the Trial Judge, after a full trial and a verdict of guilty by the jury, set the verdict aside, the Supreme Court sustained the appeal of the Government because only the Trial Judge's ruling had to be reversed; no new trial was involved. However, in *Jenkins,* where evidence had to be taken again, the appeal was dismissed because a retrial would have violated the Constitution. The *Jenkins* court noted (pp 369–370): "Here there was a judgment discharging the defendant, although we cannot say with assurance whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause * * * that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings. *The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent's favor. To subject him to any further such proceedings at this stage would violate the Double Jeopardy Clause"* (emphasis added).

The facts of *Jenkins* are not dissimilar to those of the case at bar. In fact, it is certain herein, although ambiguous in *Jenkins,* that this judgment was a determination grounded upon the People's proof. For here, a trial which could have resulted in a conviction has "terminated in respondent's favor" and any retrial would place defendant in jeopardy a second time. With the possible exception of *People v Sabella* (35 NY2d 158), as cited by the majority, there are no cases which permit a retrial of an indictment after the initial trial resulted in defendant's favor upon a determination based upon the evidence presented. (See, e.g., Note, Double Jeopardy: Discretion of a Trial Judge to Declare a Mistrial on the

Basis of a Hung Jury, 44 Fordham L Rev 389.) I am also supported in my position by the First and Fourth Departments, which have recently held that a trial order of dismissal, on facts such as those presented here, is not appealable (see *People v Brown,* 48 AD2d 95; *People v Gesegnet,* 47 AD2d 333).

There was involved here only a question of the admissibility of evidence, which does not present an exception to the double jeopardy rules. This was not a trial which was aborted for "manifest necessity". It was a full trial, with full opportunity to the People to put in its case. It failed to establish defendant's guilt beyond a reasonable doubt; the dismissal for such reason is the equivalent of an acquittal.

I simply note in conclusion that, although the trial court may have erred in its ruling regarding the admissibility of the confession, this error cannot affect the constitutional protection. The proscription against multiple prosecutions is rigorous, with very limited exceptions not applicable here. To review determinations of a court after a criminal prosecution has resulted in defendant's favor is to judicially emasculate a constitutional protection which, of course, is impermissible.

RABIN, Acting P. J., MARTUSCELLO and COHALAN, JJ., concur with SHAPIRO, J.; CHRIST, J., dissents and votes to dismiss the appeal, with an opinion.

Trial order of dismissal of the County Court, Westchester County, rendered June 18, 1974, reversed, on the law, and new trial ordered.