Joseph D. Quinn, Jr., J.
Immediately before commencement of jury selection in a new trial upon the 10 count indictment in this criminal action, after an earlier declaration of a mistrial arising from the first jury’s failure to reach a *629 verdict, defendant made an oral application to prohibit the People from reprosecuting him under the indictment’s fifth and eighth counts, which the first trial court (Joseph P. Sullivan, J.) declined to submit to the jury, and under the ninth and tenth counts, which that court dismissed at the close of the People’s case upon the basis of legally insufficient trial evidence. Claiming that a retrial under these four counts would result in his being twice put in jeopardy for the same offenses, defendant asserted that CPL 280.20 and 310.60, insofar as they purport to prescribe that a mistrial, brought about by jury deadlock or otherwise, has the effect of reviving dismissed counts for the purpose of further trial, do violence to the double jeopardy clause of the Fifth Amendment of the Federal Constitution.
In essence, the application presents questions of (1) whether the dismissal of a count of an indictment for want of legally sufficient trial evidence amounts to an acquittal which bars subsequent prosecution of the dismissed count upon retrial of the indictment after a jury hangs as to other counts submitted, and (2) whether the mere refusal of a trial court to submit to a jury has the same effect as outright dismissal where reprosecution is concerned.
Following argument, this court answered the first question in the affirmátive and the second in the negative, and thus granted the application to the extent of prohibiting the People from retrying defendant upon the ninth and tenth counts. The balance of relief, involving the previously unsubmitted fifth and eighth counts, was denied. To the degree that they stood in the way of a successful plea of the defense of former jeopardy under the circumstances, CPL 280.20 and 310.60 were stricken down on constitutional grounds.
This disposition was made summarily from the bench with the understanding and consent of counsel that this formal opinion and order would follow. The court was not unmindful that the challenge to the constitutionality of State statutes raised by defendant dictated that the Attorney-General of New York be given notice and an opportunity to intervene and defend under the provisions of section 71 of the Executive Law (see People v Darson, 48 AD2d 931). Nevertheless, the age and stage of the case and the need to move an overcrowded trial calendar were factors which led to dispensing with compliance with this requirement.
On the basis of acts said to have been committed on June *630 21, 1974, defendant was indicted on several charges ranging from attempted murder of a police officer performing his official duties to assault in the first and second degrees, robbery in the first degree, burglary in the first degree, grand larceny in the third degree and criminal possession of a weapon.
Trial of the cause to a court and jury was begun during the month of June, 1974. At the close of the State’s case and on July 9, 1975, Mr. Justice Sullivan, acting upon a defense motion for a trial order throwing out all counts, dismissed the robbery charges, specified in the ninth and tenth counts of the indictment, for lack of sufficient proof to sustain them. What is more, an examination of the trial minutes discloses that, at that time, the prosecutor conceded the shortcomings of the People’s case in this regard. After both sides had rested, the Trial Judge refused to give one of the first degree assault charges and one of the burglary first charges, set forth in the fifth and eighth counts respectively, to the jury. The jury failed to agree upon a verdict as to any of the six remaining counts after three days of deliberations, the case was mistrialed, the jurors were discharged and a new trial was ordered.
The case was reached for retrial in this part earlier this month and the double jeopardy questions were raised for the first time.
These questions draw into focus the two sections of the CPL previously mentioned. Further, they call for a re-examination of the meaning and consequences of the remedy now known as a trial order of dismissal as well as a close look at a related area of the same chapter, namely, the section authorizing appellate review of such an order. The examination must be made from the standpoint of the relationship between the concept of double jeopardy and the subject matter of the statutory sections.
The catchline of CPL 280.20 is "Motion for mistrial; status of indictment upon new trial”.
The body of the section states that "[ujpon a new trial resulting from an order declaring a mistrial, the indictment is deemed to contain all the counts which it contained at the time the previous trial was commenced, regardless of whether any count was thereafter dismissed by the court prior to the mistrial order. ” (Emphasis supplied.)
CPL 310.60 bears the catchline "Discharge of jury before rendition of verdict and effect thereof’.
*631 Subdivision 2 of this section, pertinent here, provides that when a deliberating jury is discharged after deadlock and mistrial, "the defendant or defendants may be retried upon the indictment. Upon such retrial, the indictment is deemed to contain all the counts which it contained at the time the previous trial was commenced, regardless of whether any count was dismissed by the court in the course of such trial.” (Emphasis supplied.)
CPL 290.10 carries with it the catchline "Trial order of dismissal”.
Subdivision 1 of that section provides that "[a]t the conclusion of the people’s case or at the conclusion of all of the evidence, the court may * * * upon motion of the defendant, issue a 'trial order of dismissal,’ dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense. ” (Emphasis supplied.)
From the language of the last-quoted section, it is evident that a trial order of dismissal is a judicial act which effectively throws out one or more counts of an indictment for want of trial evidence legally sufficient to support the charged crime or any lesser included offense. It is nothing more than a new name for an old remedy — a court directed acquittal — a judicial ruling from which there was no right of appeal by the prosecution before 1971 (cf. People v Marra, 13 NY2d 18; People v Brooks, 50 AD2d 319; Code Crim Pro, §§ 410, 518, subd 3).
The change in the nomenclature of this old remedy was enacted in 1970 and became operative in 1971. While it is true that no change in the substantive nature of the remedy was intended by the legislative body, it is equally true that this body did demonstrate an intent to limit radically the effect of the remedy.
The first indication of such an intent is to be found in CPL 450.20 (subd 2). This section and subdivision afford the People an opportunity to appeal, as of right, from a trial order of dismissal. Intent to restrict the effect of this remedy even further is evidenced by the language of CPL 280.20 and 310.60, quoted above. Quite obviously, these sections vitiate a trial order of dismissal that is followed by a mistrial.
Since a trial order of dismissal is tantamount to acquittal, it is difficult to perceive how these legislative changes and the concept of double jeopardy can abide each other. However, our *632 departments are not in agreement on this fundamental issue. On the subject of the appealability of such an order issued during the course of a trial to a court and jury, the Fourth Department has twice held CPL 450.20 (subd 2) unconstitutional on the ground that a reversal on appeal under that section and subdivision would subject a defendant to a new trial and to double jeopardy (People v Gesegnet, 47 AD2d 333; People v Piazza, 47 AD2d 990; see People ex rel. Pendleton v Smith, 83 Misc 2d 503). The First Department followed suit in People v Brown (48 AD2d 95). The Second Department recently went the other way and upheld the constitutionality of CPL 450.20 (subd 2) in People v Brooks (50 AD2d 319, supra).
The cited First and Fourth Department decisions were predicated upon two opinions of the United States Supreme Court which came down on the same day, February 25, 1975, in United States v Wilson (420 US 332) and United States v Jenkins (420 US 358). The Second Department read Wilson and Jenkins differently.
If the First Department’s Brown decision were dispositive of the issues in the instant action, this court would be constrained and there would be no need to go further. Unfortunately, Brown does not directly answer the questions posed here.
The basic issue facing this court is whether the double jeopardy clause of the Fifth Amendment can be harmonized with State legislative enactments which put a court order, which requires an evaluation of trial evidence and a determination that such evidence is too thin to support a conviction and which has the force of acquittal, on a par with routine trial rulings and permits that order to be aborted when a jury disagreement over unrelated matters leads to a mistrial and direction for a new trial. In our view this question must be answered in the negative. If, as Brown teaches, that order of dismissal is not made appealable by the subsequent mistrial, then, neither may it be automatically dissolved by mistrial. To hold otherwise would be to do nothing short of reducing the remedy to a tentative finding in a jury trial to be dependent for its continued life upon a subsequent verdict. Research discloses that a majority of the Appellate Term of this Department reached a similar conclusion in People v Smith (81 Misc 2d 926, 927).
To our way of thinking, unsubmitted counts do not rise to the same level as dismissed counts since a refusal to submit *633 rests upon factors unrelated to the standard of proof for conviction. Thus, they survive for purposes of retrial after mistrial.
Accordingly, defendant’s motion is granted to the extent indicated herein.