■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM LINEMAN, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, entered April 15, 1975, which granted defendant's motion for a trial order of dismissal. Order reversed, on the law, and indictment reinstated. Defendant was indicted for the murder of his wife. Specifically, he was charged with intentionally causing "the death of June V. Lineman by means of a dangerous instrument, to wit: a sharp instrument", on June 13, 1973. At the close of the People's case, the Trial Judge granted defendant's motion for a trial order of dismissal of the indictment on the ground that the People had failed to make out a prima facie case (see CPL 290.10). We reverse and reinstate the indictment. Initially, we note that CPL 450.20 (subd 2), which permits the People to appeal as of right from a trial order of dismissal, does not violate the double jeopardy provisions of the United States Constitution (see *People v Brooks,* 50 AD2d 319). At the trial, the medical examiner who performed the autopsy testified that the cause of death was a single stab wound in the upper abdominal wall. He further testified that he didn't think that the wound had been inflicted accidentally; that the probability was that the wound had not been self-inflicted; and that in view of the nature and angle of the wound, it would be rather difficult for the wound to have been inflicted accidentally. He did concede the "possibility" that it had been accidentally inflicted. The deceased's mother testified that on June 12, 1973, as well as on several other occasions, defendant had threatened to evict her and the deceased from their home and that two weeks prior thereto the defendant had told his wife, on two occasions and in a threatening tone, "I am going to bury you."

A neighbor testified that on June 10, 1973 defendant had told him that he wanted to sell the house, but that his wife refused to sell the house, which was in her name alone. Two male friends of the defendant and the deceased, who had been with them during the evening of June 12, 1973, testified that they all had some beers and had accompanied the deceased to an appliance store where she purchased an air conditioner, and that on the way to the appliance store defendant told his wife that if she cheated on him he would "stitch her up". The People's evidence indicated that all of the guests of the Lineman family who were present in the Lineman house that evening, left the house before the family retired for the night. The deceased's 14-year-old daughter testified that she had gone to bed at 10:30 P.M. Before retiring she saw her mother, dressed, sitting in the living room with defendant. The daughter awoke around midnight and noticed that there had been an electrical blackout in the house. She went into the hall and saw her mother lying on the floor in her nightgown saying "help me". A man, whom she couldn't identify, was standing over her mother. The daughter went to the basement to restore the lights. When she returned, just a few minutes later, she saw her mother on the floor and the man standing over her, in the same positions as when she had first gone downstairs. On that occasion, with the lights on, she identified the man as the defendant; he was wearing a tee shirt and pajamas. The daughter told defendant that she was going to call her grandmother. Defendant asked her not to do so. The daughter then told defendant that she was going to the basement to sleep with her grandmother. When she reached the basement she told her grandmother what she had seen. The grandmother then came up the stairs and found defendant, in street clothes, dragging the deceased by her arms, in an apparent effort to remove her from the hallway to the bedroom. In response to her inquiry, defendant stated that he had been trying to get his wife to go to bed and that she would not move. The grandmother suggested that they call a police ambulance. Defendant replied: "No, no. You can't call the police. You can't call them in her state." She insisted, and defendant finally offered to get the neighbor to drive his wife to the hospital. The grandmother then called the police. The neighbor testified that defendant came to his house at about midnight. Defendant told him that his wife was bleeding and may have had a miscarriage. However, the autopsy did not indicate that the deceased was pregnant. Defendant wanted him to drive his wife to the hospital. Upon viewing defendant's wife, the neighbor told him that his wife was dying, that she shouldn't be moved and that an ambulance and the police should be called. When the grandmother advised the neighbor that an ambulance and the police had been called, he went home. At the close of the People's case defendant moved to dismiss; the trial court granted the motion, solely on the ground that the medical examiner could not rule out the possibility that the wound had been self-inflicted. In our view, the cumulative evidence of defendant's conflicts with, and his threats to, the deceased; his presence at the scene; and his questionable conduct and statements when discovered near the body, were sufficient to meet the common-law standard for proving guilt by circumstantial evidence (see *People v Wachowicz,* 22 NY2d 369; *People v Gates,* 24 NY2d 666; *People v Lagana,* 36 NY2d 71; People v Benzinger, 36 NY2d 29). The mere existence of a medical possibility that the wound was self-inflicted is not enough to overcome the quantum of circumstantial evidence at bar (see *People v Harris,* 306 NY 345; *People v Blake,* 5 NY2d 118). Accordingly, the order should be reversed and the indictment reinstated. Latham, Acting P. J., Cohalan, Rabin, Shapiro and Titone, JJ., concur.