■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD O'NEILL, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered July 18, 1975, convicting him of manslaughter in the first degree (two counts), upon a jury verdict, and imposing sentence. Judgment reversed, on the law, second count of the indictment dismissed; new trial ordered as to the first count of the indictment. The findings of fact are affirmed. At the time of the alleged crimes defendant was a Lieutenant on the Yonkers Police Force. He stands convicted of manslaughter arising out of the fatal shooting of James Fuller, in the early hours of February 22, 1972, at the Glass Door Bar in Yonkers, New York. Fuller, the manager of the Glass Door, was the boyfriend of Alicia O'Neill, defendant's daughter, who had been absent from home for three days. She was 19 years old at the time and had a history ,of drug abuse. As a result of Fuller's death, on March 2, 1972 defendant was indicted and charged with two counts of manslaughter in the first degree, as follows: (1) "The defendant, in the City of Yonkers, County of Westchester and State of New York, on or about February 22, 1972 did, with intent to cause serious physical injury to another person, to wit: James Fuller, did cause the death of such person." (2) "The defendant, in the City of Yonkers, County of Westchester, State of New York, on or about February 22, 1972, did, with intent to cause the death of another person, to wit: James Fuller, he caused the death of such person, to wit: James Fuller while acting under the influence of extreme emotional disturbance." The first trial commenced in April, 1973. At the close of the People's case the defendant moved to dismiss the second count of the indictment. The court reserved decision but, at the end of the entire case, granted the defendant's motion and dismissed the second count of the indictment, ruling as follows: "The Court: Counsel with respect to defendants motion to dismiss the first count of the indictment, which is a motion renewed, and which had previously been denied. The motion will again be denied at this time. Now, with respect to motion *directed to Count number two of the indictment, which is the count directed* to the defendant intending to cause the death or *[sic]* James Fuller and causing the death of James Fuller, while acting under influence of extreme emotional disturbance. This motion was made at the end of the People *[sic]* case and the Court reserved. With respect to that, that motion the motion is granted and that count will be dismissed. And the Court has examined section 125.25 of the Penal Law and section 125.20 subdivision 2 of the Penal Law, and in consideration of these of these *[sic]* two sections with which *[sic]* are the sections having to do with causing the death of a person, third person while acting under the influence of extreme emotional disturbance. The Court does not believe that there has been any showing in this case that these sections apply. Under the indictment brought by the Grand

Jury. Therefore, count number two of the indictment is dismissed and will not be submitted to the jury." The first count of the indictment was submitted to the jury but, after three full days of deliberation, it was unable to reach a verdict, and a mistrial was subsequently declared. CPL 310.60 provides: "Discharge of jury before rendition of verdict and effect thereof. 1. A deliberating jury may be discharged by the court without having rendered a verdict only when: * * * 2. When the jury is so discharged, the defendant or defendants may be retried upon the indictment. *Upon such retrial, the indictment is deemed to contain all the counts which it contained at the time the previous trial was commenced, regardless of whether any count was dismissed by the court in the course of such trial."* (Emphasis supplied.) The People appealed from the trial order dismissing the second count in an effort to join that count with the first count at the new trial. The appeal was dismissed by this court *(People v O'Neill,* 45 AD2d 1038). We recalled and vacated that decision and rendered the following new decision *(People v O'Neill,* 45 AD2d 958, 959): "Appeal by the People from a trial order of the County Court, Westchester County, made on May 14, 1972, which dismissed the second count of the indictment. Appeal dismissed. The second count of the indictment was dismissed during the trial upon defendant's application. After that dismissal, the jury was unable to agree upon a verdict as to the remaining first count. The court thereupon discharged the jury. CPL 310.60 provides that upon a retrial in such case the indictment is deemed to contain all the counts which it contained at the time the previous trial was commenced, regardless of whether any count was dismissed by the court in the course of such trial. This renders academic the question of whether the trial court did or did not err in dismissing the second count." The case was thereafter scheduled for trial in the County Court and it became clear that the Trial Judge intended to permit the reinstatment of the second count. The defendant then instituted a proceeding pursuant to CPLR article 78 in this court to (1) prohibit the retrial upon the second count of the indictment and (2) dismiss that count on the ground that a retrial on that count would violate his constitutional protection against double jeopardy and that CPL 310.60 (subd 2), requiring such retrial, is unconstitutional. On April 4, 1975 this court denied the application and dismissed the proceeding *(People v O'Neill,* 49 AD2d 702, amd 49 AD2d 702, amd 49 AD2d 703). Defendant then appealed from our order dismissing his petition. In the meantime, however, the second trial commenced in April, 1975 and, on May 13, 1975, the jury returned a verdict of guilty on both counts. On June 16, 1975 the Court of Appeals denied a motion to dismiss the prohibition appeal as moot *(People v O'Neill,* 36 NY2d 964). On July 18, 1975 defendant was sentenced to prison on both counts, and this appeal ensued. On November 19, 1975 another motion to dismiss the prohibition appeal was denied *(People v O'Neill,* 37 NY2d 942). On June 17, 1976 our judgment dismissing the prohibition proceeding was affirmed, the Court of Appeals holding: "Prohibition is not now warranted where the trial sought to be prohibited has been held and where the issues tendered may be raised on the direct appeal following such trial now pending in the Appellate Division." *(People v O'Neill,* 39 NY2d 924, 925.) In the Court of Appeals one of the cases which had been joined for argument with defendant's appeal from the judgment dismissing his petition for prohibition was *People v Brown* (40 NY2d 381, cert den 433 US 913). On June 17, 1976, the same day on which the Court of Appeals affirmed the judgment dismissing defendant's prohibition petition, that court decided *Brown* and ruled (pp 382-383): "We now hold that CPL 450.20 (subd 2) providing that the People may appeal a trial order of dismissal

entered pursuant to CPL 290.10 is *unconstitutional as violative of the right not to be placed twice in jeopardy for the same offense* (NY Const, art I, § 6; US Const, 5th Amdt) if *'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand'. (United States v Jenkins,* 420 US 358, 370.)" (Emphasis supplied.) At bar, the second count of the indictment having been dismissed by a trial order of dismissal at the first trial, the second trial of the dismissed count indisputably constituted "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged". Accordingly, the second trial of the dismissed second count was "unconstitutional as violative of the right not to be placed twice in jeopardy for the same offense (NY Const, art 1, § 6; US Const, 5th Amdt)". *(People v Brown, supra.)** To the extent that CPL 310.60 (subd 2) "authorized" the retrial of the dismissed second count, that statute is unconstitutional (see *People v Brown, supra; People v Cuvilje,* 85 Misc 2d 628; *People v Smith,* 82 Misc 2d 926). Not only was the retrial of the second count unconstitutional, such retrial prejudiced the trial of the first count, in two major respects. *First:* The trial court used the "constitutionally tainted" second count—which should not have been in the second trial—as a springboard to direct a verdict on the first count, should defendant be found guilty on the second count. Thus, the court charged: "In order to find the defendant guilty under the second count of the indictment, you *must* also find him guilty under the first count of the indictment" (emphasis supplied). In the same vein, the verdict sheet given to the jury advised that there were three possible verdicts, the first of which was the following: "1. GUILTY OF MANSLAUGHTER IN THE FIRST DEGREE AS CHARGED IN FIRST COUNT OF INDICTMENT, AND GUILTY OF MANSLAUGHTER IN THE FIRST DEGREE AS CHARGED IN SECOND COUNT OF INDICTMENT". Thus, if the second count has not been in the second trial the jury could not have been instructed that if it found defendant guilty of that second count, it *must* also find him guilty of the first count. The prejudice engendered by this direction mandates a new trial of the first count (see *Benton v Maryland,* 395 US 784, 797-798; *United States ex rel. Hetenyi v Wilkins,* 348 F2d 844, cert den *sub nom. Mancusi v Hetenyi,* 383 US 913). *Second:* The elements of the first and second counts are such that if defendant desired to present evidence to negate intent under the first count ("defendant * * * with intent to cause serious physical injury to another person * * * did cause the death of such person"), that evidence might well have enhanced the possibility of conviction under the *second* count ("defendant * * * with intent to cause the death of another person * * * caused the death of such person * * * while [defendant was] acting under the influence of extreme emotional disturbance"). In this connection we note that the prosecution elicited from certain witnesses the belief that defendant was intoxicated at the time of the homicide. It must also be observed that the jury returned a number of times for further instructions. We find that in the course of charging that a man is deemed to intend the natural consequences of his act, the court ultimately and prejudicially telescoped the doctrine so that the jury was instructed that the act *was* the intent. Thus, at one point the trial court instructed that "intent *is* the act" (emphasis supplied). Subsequently, the jury was instructed that "intent *is* the natural consequences *[sic]* of what one's act or conduct is unless there is some sort of circumstances which make it impossible for the intent to be there" (emphasis supplied). In our

---

* (Cf. *Lee v United States* 432 US 23.)

opinion, the instruction that intent *is* the act is tantamount to advising the jury that if defendant fired the bullet he *must* have intended to fire it. The subject instruction, in the circumstances of this case, was highly prejudicial. The "intent is the act" instruction constituted essentially the same sort of erroneous reasoning which was criticized by the Court of Appeals in *Stokes v People* (53 NY 164, 179), where that court stated: "The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court." We have carefully examined all of appellant's other contentions, including his assertion that as a matter of law the evidence presented did not and could not establish guilt beyond a reasonable doubt and that he was deprived of his right to a speedy trial. However, we find no grounds for reversal other than those stated herein. Hopkins, J. P., Margett, Damiani and Rabin, JJ., concur.