Wachtler, J.
In each of these nonjury cases the court dismissed the indictment on the ground that the evidence submitted at the trial was insufficient to establish the crime charged and the People appealed pursuant to CPL 450.20 (subd. 2). The defendants argue that the appeals should be dismissed because (1) the CPL does not permit the People to appeal from a trial order of dismissal in a nonjury case and in any event (2) the trial courts did not dismiss on the law, but rather acquitted the defendants on the merits, a determination from which no appeal lies. In the alternative the defendants contest the People’s claim that the trial courts erred in holding that the trial evidence was insufficient to establish a prima facie case.
On the general question we have concluded that CPL 450.20 (subd. 2), authorizing the People to appeal from a trial order of dismissal (CPL 290.10) applies to jury and nonjury cases alike, whenever the court dismisses a charge on the ground that the evidence produced at trial is insufficient as a matter of law. As to the individual cases, we have found in Pelhncm that the court granted the defendant’s motion, dismissing on the law but erred in doing so since the proof at trial was legally sufficient to establish a prima facie case. In Sabella, on the other hand, the order dismissing the appeal should be affirmed since *161 the court, following the defendant’s request for an acquittal, must be deemed to have reached the merits and in effect, if not in form, acquitted the defendant on the facts.
In 1970 the defendant Fellman, an architect active in land development on Long Island, was subpoenaed to appear before a Suffolk County Grand Jury investigating complaints of corruption involving county officials. He was granted immunity and questioned concerning his relationship with Paul Wingler, an engineer employed by the Suffolk County Health Department, who apparently also performed engineering services on the side for private firms and individuals. Fellman admitted giving Wingler six checks totaling $3,500 but he informed the Grand Jury that the payments represented legitimate fees paid to Wingler for services performed in his individual capacity as a licensed engineer.
In one instance, involving a check for $1,000, Fellman stated that Wingler earned this fee by devising an alternate plan for installing a swimming pool in Babylon when, following excavation, there was a “ soil failure ” or “ complete collapse of the ground ” requiring abandonment of the original installation plan. In support of this explanation of the payment Fellman identified a “ sepia ” copy of the alternate plan bearing the initials “ P.W. ”, a copy of which, he stated, had been given to one of his general contractors. He denied that any of the payments to Wingler “ were in the nature of bribes or payoffs concerning official work that he had done ”.
The defendant was indicted for perjury in the first degree for giving false testimony during his appearance before the Grand Jury. At the trial, which as indicated was held before the court without a jury, the prosecutor called William Roberts, an engineer commissioned by the defendant to design the installation for the Babylon pool project. Roberts stated that there was no cave in, soil collapse, or soil failure at the site and the alternate plan, which was designed to fill a different need, was in fact received on the date that excavation began. He also testified that he never saw Wingler at the site and only learned of his connection with the project when, sometime after it was completed, certain newspaper articles reported the payments made by Fellman to Wingler. At this point he approached the defendant: “ I asked Mr. Fellman, ‘ What are these articles *162 all about? ’ And, ‘ What is this. comment or comments that Paul did work on the pools and got $3,500 for.’ And Mr. Fell-man said that Mr. Wingler had never worked for him and the money was payoffs that he was passing on to Mr. Wingler from clients of his for favors that Wingler had done for them ”.
Briefly stated the remainder of the People’s case consisted of testimony by contractors and their employees to the effect that there was no soil problem at the Babylon site,' that the alternate plan was delivered on the day excavation began and that the plan they received did not bear the initials ‘ ‘ P.W. ’ ’. If Wingler was involved in the project they were not aware of his participation. There was also testimony that on several occasions Wingler, acting in his official capacity, approved, or recommended approval, of Fellman’s projects and that in at least one instance subsequent inspection of the premises revealed that the approval was improperly granted and had to be withdrawn.
When the People rested their case counsel for the defendant stated: “ Now, if Tour Honor please, at this time, pursuant to Section 290.10 of the CPL, I move for a trial order of dismissal upon the grounds that the evidence before the Court is not legally sufficient to establish the offense charged nor any lesser includable offense.”
One of the grounds asserted was that the People had not corroborated Roberts’ testimony as is required by section 210.50 of the Penal Law because they relied on circumstantial evidence and “ as a matter of law the inferences they ask you to draw do not exclude to a moral certainty every hypotheses other than the defendant’s guilt.”
The court held that even “ assuming for the purpose of this motion that all of the evidence favoring the People is credible ”, the circumstantial proof used to corroborate Roberts’ testimony was nevertheless of “no effect [since] it is consistent with both the hypothesis of innocence and the hypothesis of guilt.” Thus the “ motion for a trial order of dismissal made at the close of the People’s case ” was granted, and the People appealed.
At the Appellate Division one Justice voted to dismiss the appeal on the ground that a trial order of dismissal was only appealable in jury cases. The other four Justices rejected this *163 view but were evenly divided on the substantive question as to whether the circumstantial evidence was sufficient to corroborate Roberts’ testimony. Thus the trial court’s order dismissing the indictment was left to stand.
The Sabella case is less complex. Here the defendant was also subpoenaed to appear before the Grand Jury, sitting this time in Kings County. He was granted immunity and asked if he had a statement to make. He stated that he did and then requested that he be brought before a Judge for a ruling as to whether the District Attorney was using illegal wiretap evidence or leads to further the Grand Jury investigation. The prosecutor stated that he was not using illegal wiretap evidence to which the defendant responded “ same answer ”. "When the foreman asked the defendant certain questions the defendant once again replied “ same answer ”. At this point the defendant was excused and told that he would be resubpoenaed at a later date. In the meantime he was requested to reconsider his position. He was never resubpoenaed but was instead indicted for contempt.
At the close of the nonjury trial, after both sides had rested the defendant summed up and requested “ a judgment of acquittal on the grounds [the] People have failed to prove * * * guilt beyond a reasonable doubt ”. Later delivering an opinion from the bench the court reviewed the evidence at length and concluded: “ I am of the opinion that in excusing the defendant and informing him that he would be recalled * * * during which time the defendant would have a chance to consider to answer the questions that would be posed to him,, that the action of the District Attorney lulled the defendant into a false sense of security that no proceeding would be instituted against him until he was recalled before the Grand Jury and given an opportunity to change his mind and answer questions posed to him. *' * * I am of the further opinion that the request made by the defendant was a valid request affecting a substantial right. I further find that under the facts and circumstances disclosed by the trial record that the defendant acted in good faith.”
After making these findings the court held “ as a matter of law that there was no willful refusal to answer any questions posed to the defendant and that his refusal to answer was *164 not contumacious or unlawful.” This was followed by a reading of GPL 290.10 (subd. 1) after which the court stated: “ The court is of the opinion that the trial evidence is not legally sufficient to establish the offense as charged in the indictment. Accordingly, the motion for a trial order of dismissal made at the conclusion of all of the evidence and on which the court reserved decision is now granted.”
The Appellate Division dismissed the appeal on the ground that “ No appeal lies by the People from a judgment in favor of defendant on the merits in a criminal case.” One Justice concurred in result since in his view a trial order of dismissal entered in a nonjury case is not appealable.
Under prior law the court could order a directed acquittal “ [i]f at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction ”. (Code Grim. Pro., § 410.) And although this called for a ruling on the law, the People could not appeal even if it was clearly based on an erroneous view of the law (People v. Marra, 13 N Y 2d 18). The appeal was specifically prohibited by statute (Code Grim. Pro., § 518, subd. 3).
The directed acquittal concept was carried forward into GPL 290.10 where it is now termed a trial order of dismissal. The portion of that statute applicable to these appeals states: “ At the conclusion of the people’s case or at the conclusion of all the evidence, the court may * * * upon motion of the defendant, issue a ‘ trial order of dismissal,’ dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.” Despite the change of name the Legislature apparently intended to merely restate prior law with some elaboration but without changing the substance of the statute (see Denzer, Practice Commentary to GPL 290.10, McKinney’s Cons. Laws of N. Y., Book 11A).
The novel feature is that the People may now seek review of the court’s determination. This is specifically authorized by GPL 450.20 (subd. 2) which states: “ An appeal to an intermediate appellate court may be taken as of right by the people from * * * [a] trial order of dismissal, entered pursuant to section 290.10 or 360.40 ”. According to the legislative commission staff which drafted the present statute, this ‘ ‘ change *165 stems from the apparent injustice of denying the People any remedy when the trial court dismisses a charge during trial upon the basis of an erroneous determination of law that the trial evidence does not establish a prima facie case. An order erroneously dismissing an indictment upon the basis of allegedly insufficient grand jury evidence, being a final judicial determination against the People, may properly be reversed and vacated upon an appeal by the People * * * yet, a comparable and equally final and erroneous order with respect to trial evidence leaves the People helpless, and unconditionally frees a defendant against whom a prima facie case has been fully proven. This unsalutary gap in the present law would be closed by a subsequent proposed provision according a right of appeal in such cases ”. (Commission Staff Comment to Proposed CPL 150.20.)
The defendants take the position that the right created is a limited one, authorizing the People to appeal from a trial order of dismissal only when it is entered in a jury case. Admittedly there is nothing in the statute or the legislative memoranda which expressly imposes this limitation. The argument is based on two grounds, one involving the technical structure of the statute and the other directed at the practical difficulties of allowing appeals from trial dismissals in nonjury cases.
The technical argument begins with the observation that article 290 of the CPL is entitled ‘1 Jury Trial — Trial Order of Dismissal ”. Significance is also attached to the fact that the predecessor statute (Code Grim. Pro., § 410) contemplated that the court would “ advise the jury to acquit ” and that the new provisions refer to procedures which should be conducted “ out of the presence of the jury ” (see, e.g., CPL 290.10, subd. 3). The argument is not without merit for these sections, like most of the CPL provisions, were obviously designed with a jury in mind, making it unmistakably clear that the provisions apply at least to jury trials. But it does not follow from this that they apply to jury trials exclusively. On the contrary the gap is bridged by CPL 320.20 (subd. 4) which specifically directs that “ The provisions governing motion practice and general procedure with respect to a jury trial are, wherever appropriate, applicable to a non-jury trial.”
*166 The core of the argument then is that it is not “ appropriate ” to allow an appeal from a trial order of dismissal in a case where “ The court in addition to determining all questions of law, is the exclusive trier of all issues of fact ” (CPL 320.20, subd. 2) because of the practical difficulties of determining whether there has been a dismissal on the law or a verdict of acquittal. Ooncededly the cases now before us amply illustrate the problem. But the alternative poses difficulties as well.
"Whether the court sits with or without a jury the People run the risk of an erroneous dismissal on the law. If the legislative intent, so clearly expressed, is to be fully realized, the People should be entitled to have such a determination reviewed and this is true whether the dismissal occurs in the context of a jury or a nonjury trial. And even if the intended reach of the statute were unclear we would have to consider whether the defendant should hazard an appeal only when he demands his right to a jury trial.
On the other hand the task of distinguishing legal from factual determinations is an accepted part of the appellate process, and the difficulties posed by these cases, although somewhat unique, are not entirely unfamiliar. In any event the cases now before us can be readily distinguished.
We agree with the Appellate Division holding in Sabella that the trial court resolved the case on the merits and the appeal should be dismissed. It is significant, but not necessarily controlling, that the “ dismissal ” occurred after both sides had rested and the defendant had in fact made a summation. Of more significance is the fact that the defendant requested an acquittal, not a trial order of dismissal. That this was the true nature of the court’s decision is revealed by the context of the opinion. The finding of insufficient proof of intent was not reached until the court concluded that the defendant had acted in good faith — a peculiarly factual determination.
. Here the defendant was clearly acquitted on the merits and it matters not that the court chose to characterize the holding as a dismissal on the law, which the defendant in any event had not requested. To allow the People to appeal this determination poses a threat to the defendant’s right not to be placed twice in jeopardy for the same offense. The Appellate Division was *167 correct in dismissing the appeal and we affirm that determination.
The Fellman case offers a useful contrast. Here the defendant explicitly requested a trial order of dismissal at the close of the People’s case. Although in the decision the court inappropriately suggested certain impressions of the facts, the holding was finally premised on the proper assumption that “ for the purpose of this motion all of the evidence favoring the People is [deemed] credible ” (see CPL 70.10, subd. 1). The finding of insufficiency turned on the legal conclusion that the circumstantial evidence of corroboration in a perjury case must meet the standard applicable to cases based wholly on circumstantial proof.
In sum everything points to the conclusion that the defendant received precisely what he requested, a dismissal on the law which effectively aborted the trial short of verdict. "Under these circumstances the statute grants the People the right to appeal, and we must determine whether the court was correct in holding that the evidence produced at trial was legally insufficient to establish the crime of perjury.
The controlling standard is found in the CPL where according to CPL 70.10 (subd. 1) “ ‘Legally sufficient evidence’ means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof; except that such evidence is not legally sufficient when corroboration required by law is absent.” In determining whether the People have reached this stage, all questions as to the quality or weight of the proof should be deferred. In other words if the prosecutor has established a prima facie case, the evidence is legally sufficient “ even though its quality or weight may be so dubious as to preclude indictment or conviction pursuant to other requirements.” To further illustrate the point the Commission Staff noted that “ evidence may be ‘ legally sufficient ’ to support a charge although it does not prove guilt ‘ beyond a reasonable doubt,’ and for that matter, although it does not even provide ‘ reasonable cause ’ to believe that the defendant committed the crime charged.” (See Commission Staff Comment to Proposed CPL 35.10, now CPL 70.10.)
In order to establish a prima facie case of perjury against the defendant Fellman at this trial the People were bound to *168 corroborate the testimony of Roberts since “ In any prosecution for perjury * * * falsity of a statement may not be established by the uncorroborated testimony of a single witness.” (Penal Law, § 210.50.) This requirement is essentially a variation of the so-called “ two witness rule ” (see Denzer & McQuillan, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 210.50), a principle of ancient derivation which is generally conceded to have outlived its original rationale (see 7 Wigmore, Evidence, § 2040). It persists in modern times primarily because it is felt that its elimination" “ would promote unfounded perjury prosecutions based on the complaints of defeated litigants and made in retaliation against honest witnesses.” (Denzer & McQuillan, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 210.50).
In its present form the rule does not require that the People prove the falsity of the statement by the direct testimony of two witnesses. A single witness will suffice provided there are “ independent corroborative circumstances ”. (People v. Doody, 172 N. Y. 165, 172.) In fact the issue may be “ determined upon circumstantial proof ” alone (People v. Doody, supra, p. 172). And according to the weight of authority, where the circumstantial evidence serves only to corroborate the direct testimony of a single witness, it need not exclude to a moral certainty every hypothesis but guilt (see Ann., Corroboration by circumstantial evidence of testimony of single witness in prosecution for perjury, 111 A. L. R. 825). Since that standard only governs cases “ where the prosecution relies wholly upon circumstantial evidence to establish the guilt of the accused ” (Richardson, Evidence [10th ed.], § 418, p. 119) it has no bearing where the circumstantial evidence merely furnishes partial proof of a single element, i.e., falsity (see Denzer & McQuillan, Practice Commentary, McKinney’s Cons. Laws of N". Y., Book 39, Penal Law, § 210.50).
Justice Hopkins in his dissenting memorandum in this case felt that the circumstantial evidence should be considered adequate if it would suffice to corroborate the testimony of an accomplice. This suggests a useful analogy (see, e.g., People v. Woodcock, 52 Cal. App. 412) for both of these corroboration rules are founded on the common theory that an accused] *169 should not be convicted solely upon the testimony of a witness having a clear motive to fabricate.. It has been our experience that this goal is adequately met when the independent evidence fairly ‘ ‘ tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [witness] is telling the truth.” (People v. Dixon, 231 N. Y. 111, 116; see, also, People v. Morhouse, 21 N Y 2d 66; People v. Wheatman, 31 N Y 2d 12.)
Here of course the circumstantial evidence related primarily to the explanation Fellman offered to the Hr and Jury as justification for the payments made to Wingler. Considering the fact that the payments were admitted and that Wingler, acting in his official capacity, had been instrumental in obtaining approval for several of Fellman’s projects, the question as to whether the payments were legitimate fees, as Fellman had testified, or illegal bribes or “ payoffs ” as Roberts maintained, depended largely on the credibility of the reason given to explain them. In this regard the testimony of the People’s other witnesses contradicting Fellman’s version of the circumstances and supporting Roberts’ statements, could, if believed, be considered as evidence tending to connect the defendant with the crime in such a way as to demonstrate that Roberts was telling the truth.
To summarize, in the Fellman case we agree with the views expressed by Justice Hopkins in his dissenting memorandum that the order dismissing the indictment is appealable and the evidence produced at trial was legally sufficient. The indictment is reinstated and a new trial ordered. In Sabella, since the defendant was acquitted on the merits, the appeal was properly dismissed by the Appellate Division.