Michael ERDHEIM, Petitioner,

v.

Charles H. GREINER, Superintendent,
Sing Sing Correctional Facility,
Respondent.

No. 97 Civ. 7002(LAK).

United States District Court,
S.D. New York.

Oct. 28, 1998.

Michael Erdheim, pro se.

David M. Cone, Assistant District Attorney, Robert M. Morgenthau, District Attorney, New York City, for Respondent.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Petitioner Michael Erdheim is before this Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In a report and recommendation dated August 28, 1998 (the "R & R"), Magistrate Judge Naomi Reice Buchwald recommended that the Court deny Erdheim's petition. The Court overrules petitioner's extensive objections. It writes separately to the extent that the reasons for its conclusion vary from those stated in the R & R.

### Discussion

*Ineffective Assistance of Counsel Claims*

■ Petitioner raises a host of ineffective assistance of counsel claims. To prevail petitioner must demonstrate both "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense."[1] The attorney must be shown to have committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[2] In assessing an attorney's conduct, the reviewing court must engage in a "highly deferential" review of that conduct and must indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[3] Rather than "grade counsel's performance," it limits itself to determining "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process."[4] The second *Strickland* prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[5]

### *Failure to Raise CPL § 30.30 Motion*

■ Erdheim grounds his first ineffective assistance claim in his attorney's failure to move to dismiss his case based on the New York speedy trial provision.[6] CPL § 30.30 provides, in pertinent part, for mandatory dismissal of an indictment "where the people are not ready for trial within ... six months of the commencement of a criminal action."[7] Such dismissals ordinarily are with prejudice and thus bar re-prosecution.[8]

■ Relying on *Parron v. Quick*,[9] respondent argues that petitioner does not have a valid ineffective assistance of counsel claim even if he had a valid Section 30.30 motion. In *Parron*, the Second Circuit held that a habeas petitioner has not been harmed by trial counsel's failure to raise a state speedy trial motion if the merits of the motion nonetheless were addressed by the state court in

1. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord, e.g., Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *United States v. Coffin*, 76 F.3d 494, 497–98 (2d Cir.), *cert. denied*, 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996).

2. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

3. *Id.* at 689, 104 S.Ct. 2052.

4. *Id.* at 696, 104 S.Ct. 2052; *see also United States v. Aguirre*, 912 F.2d 555, 561 (2d Cir. 1990).

5. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *accord, United States v. Tarricone*, 996 F.2d 1414, 1417 (2d Cir.1993).

6. N.Y. Crim.Proc.Law § 30.30 (McKinney 1998).

7. *Id.*

8. *Parron v. Quick*, 869 F.2d 87 (2d Cir.), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 127 (1989).

9. *Id.*

a post-trial ineffective assistance of counsel claim.[10]

The facts are similar here—Erdheim raised this issue on appeal[11] and the Appellate Division rejected it.[12] The analogy to *Parron*, however, has no basis. Important in *Parron* was that "counsel's failure to move earlier was a clearly deficient performance."[13] This enabled the circuit to reason that the Appellate Division's rejection of the ineffective assistance of counsel claim was predicated on the failure of petitioner to show prejudice, that is, that the speedy trial claim was meritless. As the Appellate Division's implicit ruling on Section 30.30 was a state law matter, its conclusion was immune from habeas review.[14]

This case differs from *Parron*. Here, counsel's performance was not so clearly deficient as to allow this Court to presume that the Appellate Division could not have held any other way.[15] Thus it is possible that the state court found merit to the speedy trial claim, but denied petitioner's ineffective as-

sistance claim on the basis of *Strickland*'s performance prong. While questions regarding New York's speedy trial act are questions of law, not so are questions regarding a counsel's performance. Since the basis of the Appellate Division's decision is unclear, this Court must determine independently whether counsel's failure to raise the speedy trial motion constituted ineffective assistance of counsel. Upon reviewing the record, the Court finds that petitioner has failed to make the requisite showing under either of *Strickland*'s tests.

■ While petitioner clearly would have been prejudiced if his counsel had failed to make a meritorious speedy trial motion,[16] it is not evident, to a reasonable probability, that petitioner had such a claim. Section 30.30 permits the People six months from the commencement of a criminal action within which to be ready for trial. Erdheim alleges that 458 days passed in this period, thus barring his re-prosecution.[17] The evidence, however, does not support this claim.

---

10. The *Parron* court noted that although the right to a speedy trial is waived by failure to raise it before trial, the ineffective assistance of counsel claim is not. *Id. at* 89–90 (citing *People v. White*, 2 N.Y.2d 220, 225, 159 N.Y.S.2d 168, 140 N.E.2d 258, *cert. denied*, 353 U.S. 969, 77 S.Ct. 1061, 1 L.Ed.2d 1133 (1957) and *People v. Carmine A.*, 53 N.Y.2d 816, 439 N.Y.S.2d 915, 422 N.E.2d 575 (1981)). Consequently, the procedural bar that otherwise would prevent a petitioner from raising the claim after trial has no effect.

11. *See* Resp. Ex. Q 55–58.

12. *People v. Erdheim*, 235 A.D.2d 216, 652 N.Y.S.2d 504 (1st Dep.), *lv. denied*, 89 N.Y.2d 1011, 658 N.Y.S.2d 249, 680 N.E.2d 623 (1997). Erdheim claims he did not receive a State court hearing on this issue. There is no merit to this. The *coram nobis* judge concluded the issue was more appropriate for direct appeal than for a Section 440.10 hearing because there were sufficient facts in the record. Resp. Ex. K 14–15. *See People v. Lane*, 60 N.Y.2d 748, 469 N.Y.S.2d 663, 457 N.E.2d 769 (1983) (mem.). In the circumstances, the judge was not required to conduct an evidentiary hearing. *People v. Garrow*, 52 A.D.2d 993, 383 N.Y.S.2d 429 (1976) (mem.); CPL §§ 440.10, subd. 2, ¶(b), 440.30, subds. 2, 4; *see also People v. Walters*, 127 A.D.2d 870, 511 N.Y.S.2d 957 (mem.), *lv. denied*, 69 N.Y.2d 956, 516 N.Y.S.2d 1040, 509 N.E.2d 375 (1987). That notwithstanding, the court did hear enough testimony regarding the speedy trial aspect of the ineffective assistance of counsel claim to satisfy itself that no issue existed.

13. *Parron v. Quick*, 869 F.2d at 90.

14. *Id.*

15. The Appellate Division held that "[d]efendant received the effective assistance of counsel." *People v. Erdheim*, 235 A.D.2d 216, 652 N.Y.S.2d 504. It is not entirely clear to this Court, however, if the Appellate Division intended to state a legal conclusion as to whether both prongs of *Strickland* had been satisfied or was commenting on counsel's actual performance.

16. *Parron v. Quick*, 869 F.2d at 90. A valid speedy motion claim under CPL § 30.30 requires dismissal of the indictment with prejudice, "and the defendant need not show that he was prejudiced by the delay." *Id.* at 88 (citing *People v. Lawrence*, 64 N.Y.2d 200, 205, 485 N.Y.S.2d 233, 474 N.E.2d 593 (1984)).

17. Pet. Ex. C. Petitioner maintains in his papers that 478 days elapsed between his arrest on May 18, 1992 and the People's statement of readiness on August 18, 1993. The Court counts only 458 days. This difference, however, is immaterial.

■ Under Section 30.30, the six-month period is tolled for periods in which motions are under consideration by the court,[18] continuances granted at the request of or with the consent of the defendant or his counsel,[19] and periods for which defendant lacks counsel.[20] During Erdheim's Section 440.10 hearing and on his direct appeal, the People provided an accounting of the time excluded by certain tolls of the six-month period. According to those calculations, although 458 days elapsed between Erdheim's arrest and the People's statement of readiness, 407 of those days were excludable under Section 30.30.[21] If this is correct, only 41 days were chargeable to the People, which is far from the six-month statutory limitation.

Erdheim does not address the statute's tolling provisions in his petition nor contest the People's calculation.[22] Since petitioner has not proved that he had a meritorious speedy trial claim, there is no reasonable probability that his counsel's failure to raise the motion affected the outcome of the case. Consequently, his ineffective assistance of counsel claim fails.[23]

■ Moreover, even if, in hindsight, the failure to raise the speedy trial issue were questionable, Erdheim's position would be without merit because his counsel's performance was not deficient at the time.[24] During petitioner's Section 440.10 proceeding, the court took evidence regarding trial counsel's performance. While declining to reach the merits of the issue,[25] the court found that:

> "the evidence at this hearing establishes that [Erdheim's counsel] was aware of the possibility of [a Section 30.30] motion and was alert to explore the viability of a speedy trial motion because during the pendency of this matter, before the commencement of trial, [counsel] did calculate the relevant time periods and determined that there was no valid 30.30 motion to be made." [26]

■ The Supreme Court has said that on petitions for habeas corpus, "a federal court is not to overturn a factual conclusion of a state court...unless the conclusion is not 'fairly supported by the record.'" [27] After

18. CPL § 30.30(4)(a). Time for the purpose of defense motions cannot be charged to the People. *People v. Worley,* 66 N.Y.2d 523, 498 N.Y.S.2d 116, 488 N.E.2d 1228 (1985). That includes reasonable time for the prosecution to respond to such motions, *People v. Kramer,* 181 A.D.2d 449, 581 N.Y.S.2d 14 (1st Dep.), *lv. denied,* 79 N.Y.2d 949, 583 N.Y.S.2d 203, 592 N.E.2d 811 (1992), and the time a court takes to decide them. *People v. Douglas,* 209 A.D.2d 161, 617 N.Y.S.2d 765 (1st Dep.1994), *lv. denied,* 85 N.Y.2d 908, 627 N.Y.S.2d 331, 650 N.E.2d 1333 (1995).

19. CPL § 30.30(4)(b). *See People v. Worley,* 66 N.Y.2d 523, 498 N.Y.S.2d 116, 488 N.E.2d 1228 (1985).

20. CPL § 30.30(4)(f). *See People v. Cortes,* 80 N.Y.2d 201, 214, 590 N.Y.S.2d 9, 604 N.E.2d 71 (1992).

21. The People provide the following chronology: Erdheim was arrested on May 17, 1993. Twenty-six days were includible in the § 30.30 limit until June 14, 1993. From June 15, 1993 to December 13, 1993 the case was adjourned by defendant to obtain new counsel. This period was excludable under CPL § 30.30(4)(f). Erdheim's new counsel requested an adjournment for the period December 14, 1993 through January 25, 1994 to prepare for trial. This period was excludable under CPL § 30.30(4)(b). The time between January 25, 1994 and February 9, 1994 (15 days) was includible in the § 30.30

limit. From February 9, 1994 to August 18, 1994 the parties engaged in motion practice and awaited decisions from the court. This period was excludable under CPL § 30.30(4)(a). Resp. Ex. R 89, (hereinafter "Resp. A.D. Br.") and 440 Tr. 342–44.

22. Instead, petitioner simply counts the total number of days between his arrest and the People's statement of readiness. Pet. Ex. C.

23. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

24. *See id.* at 690, 104 S.Ct. 2052 (a court must "judge the reasonableness of the counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct").

25. Tr. § 440 Decision 15. Although the court heard argument on the matter and made the quoted findings of fact, it held that the "issue is more appropriately the subject of a direct appeal, since sufficient facts appear on the record in the form of the various calendar calls to permit adequate review on direct appeal." *Id.*

26. *Id.*

27. *Parker v. Dugger,* 498 U.S. 308, 320, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) (quoting 28 U.S.C.

examining the record, this Court concludes this finding is adequately supported,[28] and thus entitled to deference under 28 U.S.C. § 2254(d)(8). While it is possible that counsel, alert to the possibility of a Section 30.30 motion, nevertheless may be constitutionally ineffective by grievously mistaking the merits of a defendant's position and thus failing to make a winning motion, that is not the case here. Erdheim has failed to articulate any cogent theory on which such a motion might have been made. In consequence, the performance of petitioner's trial counsel did not fall below constitutional standards.

*Pre-indictment Delay*

■ Petitioner next claims that his counsel failed to object to the delay between the beginning of the police investigation into the Katz complaint [29] and his arraignment. This failure, argues petitioner, constituted ineffective assistance of counsel since the remedy for pre-indictment delay is dismissal of the indictment. The claim is unfounded.

§ 2254(d)(8)). This standard governs here as opposed to that under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (1998). *See Boria v. Keane*, 90 F.3d 36, 37 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).

**28.** Erdheim's trial counsel, McQueeney, testified that his "calculation showed that [he] couldn't...put together a showing that more than six months' time had elapsed," Tr. 440.10 at 58, and that he "did...go over the court calendar...with respect to" the relevant dates. *Id.* at 60. McQueeney testified also that he took into consideration the comment made by Judge Williams in which she "expressed the view that [it] was somewhat disingenuous to say that [the People] are ready for trial but...want to supersede." *Id.* at 51.

**29.** Katz first brought her complaint against Erdheim in August 1991. Erdheim was not indicted until May 1993.

**30.** *People v. Singer*, 44 N.Y.2d 241, 252, 405 N.Y.S.2d 17, 24, 376 N.E.2d 179 (1978) (citing *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)); *see also People v. Staley*, 41 N.Y.2d 789, 791, 396 N.Y.S.2d 339, 341, 364 N.E.2d 1111 (1977) ("unreasonable delay in prosecuting a defendant constitutes a denial of due process of law").

■ In considering this contention, it is important to bear in mind that the protection against pre-indictment delay afforded by the Constitution is narrower than that available under New York law. As a federal matter, pre-indictment delay "is governed by the due process clause which generally requires a showing of actual prejudice before dismissal would be warranted." [30] The New York Court of Appeals nevertheless has held, necessarily as a matter of state law, that an indictment may be dismissed for pre-indictment delay without a showing of prejudice where the delay is unjustifiable [31] or it stigmatizes the defendant.[32] Erdheim appears to argue that he was deprived of due process of law under both the federal and state constitutions by pre-indictment delay and that his counsel's failure to raise the state constitutional point was constitutionally ineffective assistance.

Erdheim has not demonstrated any prejudice arising from the government's delay in indicting him. In consequence, his federal due process claim, if any, is without merit.

**31.** *See Singer*, 44 N.Y.2d at 254, 405 N.Y.S.2d at 25, 376 N.E.2d 179 (citing *People v. Staley*, 41 N.Y.2d 789, 396 N.Y.S.2d 339, 364 N.E.2d 1111 ("Once a suspect has been proceeded against in some sort of judicial proceeding as an accused, either by arrest, indictment, or other pretrial proceeding, he is entitled, *in the absence of prosecutorial justification or excuse*, to reasonably prompt prosecution of the charges against him.") (emphasis added)).

**32.** *See People v. Winfrey*, 20 N.Y.2d 138, 281 N.Y.S.2d 823, 228 N.E.2d 808 (1967) (four and a half years' delay in prosecuting prior to defendant's indictment, but after the initiation of criminal proceedings, deprived him of due process of law); *People v. Rodriguez*, 205 A.D.2d 417, 613 N.Y.S.2d 398 (1st Dep.) (finding undue delay when after five months police knew defendant was hospitalized as a paraplegic, yet did not indict for another twelve), *lv. denied*, 84 N.Y.2d 872, 618 N.Y.S.2d 17, 642 N.E.2d 336 (1994). In *Singer*, Judge Gabrielli, concurring in part and dissenting in part, summed up the rule derived from these cases: "Once the State has actually initiated criminal proceedings against a defendant with respect to a particular crime, due process proscribes undue delay in pressing those proceedings to completion.... In such cases, the injury suffered by a defendant is plain: he has been officially and publicly branded as the person whom the State believes to be guilty." 44 N.Y.2d at 256, 405 N.Y.S.2d at 27, 376 N.E.2d 179.

And while the lack of a showing of prejudice flowing from pre-indictment delay is not fatal under New York law where the People cannot justify the delay or where the defendant has been stigmatized by the charge during the period of delay, neither circumstance obtains here. The People had good cause for any delay prior to indictment,[33] and petitioner was not negatively stigmatized during the period of delay for the simple reason that neither he nor the public was aware of the initial complaint filed by Katz.[34] Since there is no support for the dismissal of petitioner's indictment for delay, he has not met the requisite showing of prejudice flowing from ineffectiveness of counsel.[35]

*Failure to Obtain Handwriting Expert*

■ Petitioner maintains that his attorney fell below the *Strickland* level of competence in failing to obtain a handwriting expert to attest to the genuineness of a signature on an allegedly forged document. Under *Strickland*, "[a]n error by counsel ... does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[36] Petitioner has not, however, demonstrated that the testimony of an expert probably would have led to a different judgment.[37] His claim therefore fails.

*Failure to Object to the Jury Charge*

1. Corroboration Charge

■ Petitioner contends that his counsel failed to object to the jury charge, which

omitted the requirement that the People corroborate Morrissey's testimony regarding petitioner's false statements.[38] There is no dispute that the charge should have been given. Any error, however, was harmless because the People discharged the statutorily required burden. The corroborating testimony rule "does not require that the People prove the falsity of the statement by the direct testimony of two witnesses. A single witness will suffice provided there are 'independent corroborative circumstances.' In fact the issue may be 'determined upon circumstantial proof' alone."[39] In light of the ample evidence corroborating Morrissey's testimony,[40] the error was harmless and counsel's failure to object did not prejudice petitioner.[41]

2. Natural Consequences of His Actions Charge

■ Petitioner claims that his counsel ought to have objected to the trial court's charge that the " 'law presumes that a person intends the natural and probable consequences of his actions.' "[42] While this Court agrees that such language would be problematic under *Sandstrom v. Montana*,[43] the record belies Erdheim's claim. Contrary to petitioner's representation, the trial court instructed the jury that "the law also permits you, but does not require you to infer that a person intends the natural and probable consequences of his actions."[44] This instruction did not shift the burden of proof to petition-

33. Resp. A.D. Br. 91–92.

34. Resp. Ex. K 15.

35. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

36. *Id.* at 691, 104 S.Ct. 2052.

37. According to the R & R, which the Court adopts in this respect, the evidence adduced at trial established that petitioner forged the statement of indebtedness, not the signature. There was no question that any of the words written were genuine. Rather, the issue was whether the signature was intended to attach to the statement of indebtedness.

38. *See* CPL § 210.50.

39. *People v. Sabella*, 35 N.Y.2d 158, 167, 359 N.Y.S.2d 100, 108, 316 N.E.2d 569 (1974) (quot-

ing *People v. Doody*, 172 N.Y. 165, 172, 64 N.E. 807 (1902)), *overruled on other grounds by People v. Brown*, 40 N.Y.2d 381, 386 N.Y.S.2d 848, 353 N.E.2d 811, *cert. denied*, 429 U.S. 975, 97 S.Ct. 482, 50 L.Ed.2d 583 (1976).

40. Resp. A.D. Br. 79–80.

41. *See Hitchcock v. Best*, —— N.Y.2d——, 669 N.Y.S.2d 419 (1998) (error in jury charge that failed to affect outcome of trial was harmless).

42. Pet. Br. 15 (misquoting Tr. 818).

43. 442 U.S. 510, 515, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)(proscribing jury instructions which shift the burden of proof onto defendants).

44. Tr. 818.

er.[45] Erdheim therefore suffered no prejudice from counsel's failure to object to it.

### Counsel's Failure to Object to the Allegedly Repugnant Verdict

■ Petitioner taxes counsel's effectiveness, claiming that he failed to object to allegedly inconsistent verdicts returned by the jury. The Court adopts the reasoning of the R & R on this point and notes that this claim fails also in light of *United States v. Zane,* which recognized that it "is well settled that even plainly inconsistent jury verdicts, simultaneously rendered [in criminal cases] are the jury's prerogative."[46] Petitioner therefore cannot demonstrate any prejudice resulting from his counsel's failure to raise a repugnant verdict claim.

### Alleged Violations of Brady and the Confrontation Clause

#### Brady *Violations*

Petitioner contends that the People failed to produce certain exculpatory material in violation of *Brady v. Maryland.*[47]

■ As an initial matter, petitioner fails to demonstrate that any of the material sought would have been favorable to him or that there is a reasonable probability that prior disclosure would have changed the outcome.[48] Absent such a showing, petitioner's claim fails.

■ Turning to the specifics, petitioner argues first that the government failed to produce transcripts of an arbitration proceeding involving Prudential–Bache. This alleged failure did not violate *Brady.* "The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."[49] Here, the alleged exculpatory evidence was known to petitioner.[50] "[T]he court sees nothing in *Brady* that places the burden of acquiring the ... materials on the government. The defendant[ ] [was] aware of the material sought and may [have] obtain[ed] it as readily as the government."[51] Petitioner's allegation fails also in that the People did not have possession of the transcripts.[52] The fact that the material could not have been obtained without a court order[53] does not *ipso facto* place it in the government's possession.

With respect to petitioner's claims that the prosecution should have turned over Katz's tax records and statements taken during Katz's first complaint in 1991, the Court adopts the reasoning of the R & R.[54]

#### Confrontation Clause

■ Petitioner's additional claim that the failure of the People to turn over the above material violated his constitutional right to confrontation is frivolous. The Confrontation Clause provides simply that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses

**45.** *See Francis v. Franklin,* 471 U.S. 307, 316–17, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

**46.** 495 F.2d 683, 690 (2d Cir.) (citing *Steckler v. United States,* 7 F.2d 59 (2d Cir.1925) (L.Hand, J.) and *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (Holmes, J.)), *cert. denied,* 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974).

**47.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**48.** *United States v. Bagley,* 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

**49.** *United States v. LeRoy,* 687 F.2d 610, 619 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

**50.** Tr. 23.

**51.** *United States v. Guerrerio,* 670 F.Supp. 1215, 1220 (S.D.N.Y.1987); *see also Pina v. Henderson,* 752 F.2d 47, 49 (2d Cir.1985).

**52.** Tr. 23–24.

**53.** Petitioner's Objections to the R & R ¶ 65.

**54.** This Court notes that the R & R relies in part on the finding of the *coram nobis* court that the 1991 Katz meeting did not result in the production of any *Rosario* material. After a review of the record it is evident that there is no basis to believe any *Brady* material existed either, *See* Tr. § 440.

against him ...." [55] Petitioner was not denied a right to confront witnesses because the People did not use any of the material at issue as evidence against petitioner.

### Conclusion

The petition for a writ of habeas corpus is denied and dismissed. There having been no substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability and certifies that any appeal would not be taken in good faith within the meaning of 28 U.S.C. § 1915.

SO ORDERED.