*416 OPINION OF THE COURT
Deborah Stevens Modica, J.
The court has conducted a bench trial of the defendant who is charged by way of information with the crime of attempted criminal contempt in the second degree, in violation of Penal Law §§ 110.00 and 215.50 (3). Decision was reserved on the defense motion to dismiss at the end of the People’s case as well as at the end of all the evidence. The defendant alleges that the People failed to adduce legally sufficient evidence that defendant had knowledge of the contents of the order of protection at issue, and also that the order of protection did not constitute a lawful mandate of the Family Court.
To establish the crime of criminal contempt in the second degree pursuant to Penal Law § 215.50 (3) there must exist a lawful order of a court clearly expressing an unequivocal mandate, and there must be an intentional violation of the order. Thus, the defendant must have known of the order and the defendant’s “conscious objective” must have been to violate the order (see, Matter of Holtzman v Beatty, 97 AD2d 79; Matter of Department of Envtl. Protection v Department of Envtl. Conservation, 70 NY2d 233). A defendant has knowledge of an order when he has been duly served with the order or was present in court and heard it issued (see, People v McCowan, 85 NY2d 985).
The People’s evidence at trial consisted of the testimony of Thomasina Williams, who is the complainant and defendant’s grandmother, as well as that of Police Officer (P.O.) Flores. In addition, a certified copy of the Family Court order of protection and an affidavit of service were received into evidence as People’s exhibits 1 and 2.
Ms. Thomasina Williams testified that she went to the Family Court on July 24, 1998 and received an order of protection against the defendant Shavar Williams, ordering him to stay away from Ms. Williams’ home. The defendant was not present in court on this occasion. Three months later, on October 24, 1998 when the defendant was at her home, Ms. Williams went to the 102nd Precinct and requested that officers return to her home and serve the order of protection upon the defendant. According to Ms. Williams, the police arrived almost immediately, she gave them the order of protection, and they read it to the defendant and gave it to him, after which they provided her with an affidavit of service, received into evidence at trial. After the defendant left her house that day, Ms. Williams went *417 outside to her garbage and saw the order of protection on the ground, torn into pieces.
Police Officer Flores testified that he went to Ms. Williams’ home on October 24, 1998 where the complainant provided him with a Family Court order of protection which the officer identified as People’s exhibit 1. Officer Flores explained to the defendant, who was present in the home, what the order was, read the order to him, and “made sure” he understood it. Officer Flores also served a Family Court petition upon the defendant on that day, filled out an affidavit of service for both documents, and gave it to Ms. Williams.
The defense evidence consisted of the testimony of Ulix George, a paralegal for the Legal Aid Society, Sabrina Singleton, the defendant’s former girlfriend, and the defendant Shavar Williams.
Ms. George testified that she reviewed and copied the relevant Family Court file in this case and that P.O. Flores’ affidavit of service was not contained in the file. There was a statement of personal service with reference to the summons and petition which did not contain information regarding where the service took place.
Sabrina Singleton testified that the defendant lived with her in Manhattan from March 1998 until January 1999.
Shavar Williams testified that he never received the order of protection ordering him to stay away from his grandmother and he never received the petition from Family Court. Although he acknowledged that the police came to his grandmother’s house on October 24, 1998 while he was there and that he saw P.O. Flores filling out paperwork, it was the defendant’s testimony that the police never gave him anything and did not tell him about an order of protection.
THE MOTION TO DISMISS
Motions to dismiss at the end of the People’s case and at the end of all the evidence are addressed to the legal sufficiency of the evidence (CPL 70.10 [1]; 290.10 [1]; 350.10 [4]). In determining the motion, a court must view the evidence in the light most favorable to the People. (People v Sabella, 35 NY2d 158; see, People v Warner-Lambert Co., 51 NY2d 295 [1980], cert denied 450 US 1031.) Under that standard, the motion to dismiss at the end of the People’s case is denied. The People established all the elements of the attempted criminal contempt in the second degree by legally sufficient evidence since, when reviewed in the light most favorable to the People, *418 the evidence established that a Family Court order of protection , a presumptively valid court order, was served on the defendant and explained to him on October 24, 1998 and that two days later he violated that order by returning to his grandmother’s house even though he was aware of the court order.
The motion to dismiss at the end of all the evidence is denied since the People adduced legally sufficient evidence of the elements of the crime charged for the reasons set forth below.
THE VERDICT
Before determining the discrete legal issues raised by the defendant as to whether the People have proven beyond a reasonable doubt all the elements of the crime charged, the court must first note that it credits the testimony of Thomasina Williams, P.O. Flores, Ulix George, and Sabrina Singleton. The court finds the testimony of Shavar Williams incredible.
Based on the credible testimony, the court makes the following findings of fact:
A Family Court order of protection was issued by Judge Mary Ellen Fitzmaurice of Queens County Family Court, first on March 26, 1998 when the Family Court petition initiating a family offense proceeding under article 8 of the Family Court Act was filed by the complainant, Thomasina Williams, naming the defendant Shavar Williams as the respondent. On that same day, the court issued a summons to the defendant to appear on June 4, 1998 and directed that it be served by the police. The defendant’s address was listed as 562 Ridgewood Avenue in Brooklyn. Four attempts were made by the police to serve the summons, petition, and order of protection upon the defendant on April 14, 15, and 16 of 1998. They were unsuccessful in doing so since the defendant no longer lived there, having moved to Manhattan to live with his girlfriend, Sabrina Singleton, in March of 1998.
On the return date, June 4, 1998, Judge Fitzmaurice extended the order of protection until July 24, 1998 and a notice was mailed to defendant at the Ridgewood Avenue address to appear on that day. On July 24, 1998, a final order of protection was granted by Judge Fitzmaurice for one year, until July 24, 1999, ordering the defendant to stay away from the complainant and her home, and the police were ordered to serve the order on defendant. It was this order, People’s exhibit 1 in evidence, that was served on the defendant on October 24, 1998 at Thomasina Williams’ home along with the *419 Family Court petition, based on the credible evidence of both Ms. Williams and P.O. Flores, further supported by People’s exhibit 2, P.O. Flores’ affidavit of service.
Since the court finds the defendant’s testimony that he was never served with the order of protection and that it was never read to him to be incredible, the defendant’s return to the complainant’s home on October 26, 1998 was a willful and intentional violation of the order of protection, beyond a reasonable doubt, based on the credible evidence in the case.
The only issue, then, is whether the order was a “lawful process or * * * mandate of a court”. (Penal Law § 215.50 [3].) The defense argues three bases for why the order of protection did not constitute a lawful process or mandate of the Family Court:
1. The Family Court did not acquire personal jurisdiction over the defendant when the order of protection was issued since it was ex parte and the petition had not been served on the defendant until the order of protection was served on October 24, 1998.
2. The service of the petition on October 24th “invalidated” the order of protection because the order predated the service of the petition upon the defendant.
3. The failure of either P.O. Flores or Ms. Williams to file the affidavit of service of the order of protection with Family Court renders the Family Court order of protection issued by Judge Fitzmaurice invalid.
The defendant’s arguments misapprehend the Family Court process in connection with family offenses outlined in article 8 of the Family Court Act. Such a proceeding originates by the filing of a petition (Family Ct Act § 812 [2] [d]; § 821 [1]) much like the filing of a complaint in a criminal case, neither of which require an arrest of the defendant prior to that filing (Family Ct Act § 812 [2] [f]). Indeed, commencement of a family offense proceeding in Family Court is more akin to the commencement of a criminal proceeding than a civil proceeding, which must commence with the service of a summons on the defendant (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 821, at 214). Since the defendant’s own evidence demonstrated that a petition was filed in Family Court in this case on March 26, 1998 alleging a family offense (Family Ct Act § 812 [1]), the action was appropriately commenced and the Family Court had jurisdiction with or without the physical presence of the defendant.
*420 Upon the filing of a petition, the Family Court is empowered to issue or extend a temporary order of protection (Family Ct Act § 821-a [2] [b]; § 828 [1] [a]) which may be done ex parte or on notice (Family Ct Act § 828 [3]). In this case, a temporary order of protection was granted on the day the petition was filed and Judge Fitzmaurice extended that order of protection on June 4, 1998, for good cause shown, until July 24, 1998. On July 24, 1998 a final order of protection was issued for one year until July 24, 1999 and it is that order that was served upon the defendant on October 24, 1998 along with the Family Court petition.
As both the documentary and testimonial evidence demonstrated at trial, attempts were made to personally serve defendant prior to July 24, 1998 which were unsuccessful because the defendant had relocated to Manhattan to live with his then-girlfriend, Ms. Singleton, unbeknownst to Ms. Williams, Family Court and the police at the time the petition was filed.
According to the Family Court Act, when it is not possible to serve the defendant, a warrant of arrest may issue (Family Ct Act § 821-a [2] [a]; § 827 [a]) but nowhere does inability to personally serve the defendant defeat jurisdiction. Indeed the Practice Commentaries to Family Court Act § 154-a, dealing with the service of the petition, specifically note that “[failure to comply with this section’s mandate * * * should not be a ground for the dismissal of the petition.” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 154-a, at 109.) In fact, as section 826 (b) of the Family Court Act makes clear, if after reasonable effort personal service is not made, the court may allow substitute service. In this case, four efforts at personal service were made, after which the court directed service of the summons to be made by mail to the defendant’s last known address, pursuant to Family Court Act § 826 (b) (see also, CPLR 308 [5]). Since the court followed the appropriate procedures for service of the summons and petition in this family offense proceeding by first making reasonable attempts at personal service before resorting to mail service (cf, Matter of Hoggard v Hoggard, 45 AD2d 38), the final order of protection issued upon the default of the defendant (see, Family Ct Act § 153-b [c]) constituted a lawful mandate of the court.
Finally, defendant’s argument that the affidavit of service filled out by P.O. Flores on October 24, 1998 must have been filed with the Family Court in order for the order of protection to be valid finds absolutely no support in the law. Section 153-b *421 of the Family Court Act, relied upon by defendant for this proposition, merely provides for a method of proving that service has occurred without the appearance of the police officer being required. In this case, we have the sworn testimony of P.O. Flores and Ms. Williams concerning service of the order of protection. That testimony proves beyond a reasonable doubt that the defendant was served with the order and informed of its contents; the affidavit of service is only additional proof of service. The defendant’s claim that failure to return the affidavit to Family Court somehow defeats jurisdiction is completely at odds with the thrust of the Family Court Act with reference to family offense proceedings and glorifies hypertechnicalities over substance.
It is the court’s finding that the evidence at trial proves beyond any reasonable doubt that the order of protection in question was a lawful mandate of the Family Court, having been issued by a Family Court Judge after the filing of a family offense petition. The credible testimonial and documentary evidence also proves beyond a reasonable doubt that the defendant was served with that order of protection on October 24, 1998 by P.O. Flores and that its contents were explained to him. The order of protection ordered the defendant to stay away from the complainant Thomasina Williams and her home. The defendant’s return to Ms. Williams’ home on October 26, 1998, a mere two days after being served with the stay away order, was an intentional and willful violation of that lawful mandate. The intentional nature of defendant’s disobedience was further demonstrated by the evidence of the torn-up copy of the order of protection found after it was served upon the defendant on October 24, 1998.
The defendant is therefore found guilty of attempted criminal contempt in the second degree beyond a reasonable doubt.